HIGGS FLETCHER & MACK LLP
PAUL J. PFINGST - #112967
pfingst@higgslaw.com
401 West A Street, Suite 2600
San Diego, CA  92101-7913
Telephone:     619 236 1551
Facsimile:     619 696 1410

KEKER & VAN NEST LLP
ELLIOT R. PETERS - # 158708
epeters@kvn.com
STEVEN A. HIRSCH - # 171825
shirsch@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
ANDREW B. KATAKIS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:11-CR-0511 (WBS) |
| Plaintiff, | **CORRECTED NOTICE OF MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT THREE OF THE SUPERSEDING INDICTMENT PURSUANT TO FED. R. CRIM. P. 29** |
| v. | |
| ANDREW B. KATAKIS, DONALD M. PARKER, ANTHONY B. JOACHIM, and W. THEODORE LONGLEY, | |
| Defendants. | Date:          May 5, 2014 |
| | Time:          10:00 a.m. |
| | Courtroom:  5 |
| | Date Filed:  December 7, 2011 |

PLEASE TAKE NOTICE that on May 5, 2014 at 10:00 a.m., or on such other date to be set by the Court, at 501 I Street, Sacramento, California, in Courtroom 5, before the Honorable William B. Shubb, Defendant Andrew Katakis will and hereby does respectfully move this Court for an order, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, granting Mr. Katakis's Motion for Judgment of Acquittal on Count Three of the Superseding Indictment.

This Corrected Motion is based on this Corrected Notice of Motion, the following Memorandum of Points and Authorities, the Supplemental Declaration of Elliot R. Peters filed concurrently herewith, the Declaration of Elliot R. Peters and [Proposed] Order filed with Mr. Katakis's original Motion for Judgment of Acquittal on Count Three (Dkt. Nos. 287-1, 288), all other papers on file in this action, and the oral argument of counsel at the hearing.

When Mr. Katakis filed his original Motion for Judgment of Acquittal on Count Three (Dkt. 287), the court reporter had not yet completed the official transcripts for the final days of trial.  Specifically, official transcripts for March 4, 5, 6, 7, 10, and 11, 2014 were not yet completed.  Having now received a complete set of transcripts, Mr. Katakis requests leave of Court to submit this Corrected Motion and Memorandum.  To the extent that Mr. Katakis's original Motion referenced testimony from the days identified above, this Corrected Memorandum adds citations to the appropriate transcripts.  For ease of reference, Mr. Katakis files an accompanying Supplemental Declaration of Elliot R. Peters to which the additional transcripts are attached.

Dated:  April 23, 2014                                    HIGGS FLETCHER & MACK LLP

                                                                 */s/ Paul Pfingst*
                                                          By:    *(as authorized on April 23, 2014)*
                                                                 PAUL PFINGST

1

Dated:  April 23, 2014                                    KEKER & VAN NEST LLP

2

3                                                By:    */s/ Elliot R. Peters*

4                                                       ELLIOT R. PETERS
                                                       STEVEN A. HIRSCH

5                                                       Attorneys for Defendant
                                                       ANDREW B. KATAKIS

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CORRECTED NOTICE OF MOTION AND MEMORANDUM
Case No. 2:11-CR-0511 (WBS)

816814.02

## CORRECTED[1] MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Andrew Katakis respectfully moves for judgment of acquittal on Count Three, the obstruction of justice charge.  The evidence purportedly supporting obstruction evaporated when the government's expert witness was forced to admit that his testimony was factually wrong.  This stunning admission left the government scrambling to come up with an entirely new theory and factual basis for their obstruction charge at the very end of the trial, after the defense had already rested its case.  This new theory, like its discredited predecessor, was not supported by sufficient evidence to permit a conviction.  In addition, its eleventh-hour injection into the case violated Mr. Katakis's due process rights by depriving him of the opportunity to defend himself.  Finally, and separately, the prosecution resurrected its failed theory in closing argument, leading the jury to convict Mr. Katakis based on evidence the government knew to be false.  In light of these severe defects, the Court should now, in advance of sentencing, grant Mr. Katakis's motion for judgment of acquittal on Count Three.

## II.   BACKGROUND

### A.   Until the close of trial, the government sought to prove that Mr. Katakis used DriveScrubber to delete 10 emails on two computers and a mail server.

#### 1.   Indictment

On December 7, 2011, the government filed an Indictment alleging two charges against Mr. Katakis: bid rigging and conspiracy to commit mail fraud.  That Indictment did not contain an obstruction of justice charge.

Eighteen months later and just nine months before trial, on May 8, 2013, the government filed a Superseding Indictment to add Count Three, alleging obstruction of justice pursuant to 18

---

[1] This Corrected Memorandum includes citations to official trial transcripts that were not available when the original Motion was filed.

U.S.C. § 1519.  Section 1519, entitled "Destruction, alteration, or falsification of records in

Federal investigations and bankruptcy", provides:

> Whoever knowingly alters, destroys, mutilates, conceals, covers up,
> falsifies, or makes a false entry in any record, document, or tangible
> object with the intent to impede, obstruction or influence the
> investigation or proper administration of any matter within the
> jurisdiction of . . . the United States . . . shall be fined under this
> title, imprisoned not more than 20 years, or both.

The Superseding Indictment charged Mr. Katakis with violating Section 1519 by

destroying emails relevant to the government investigation.  It alleged that "[in] or about

September 2010":

> Specifically, defendant KATAKIS deleted and caused others to
> delete electronic records and documents.  KATAKIS also installed
> and used and caused others to install and use a software program
> that overwrote deleted electronic records and documents so that
> they could not be viewed or recovered. [2]

The Superseding Indictment thus made clear to the defense that the conduct to be refuted

was Mr. Katakis's alleged deletion, *i.e.* destruction, of "electronic records and documents."

## 2.  The government's expert disclosure, trial brief, and opening statement

The government's subsequently focused exclusively on this alleged destruction of

evidence.  In the form of its expert disclosure of FBI Special Agent Scott Medlin, its trial brief, its

opening statement, and the evidence presented at trial[3], the government made clear that Mr.

Katakis had violated Section 1519 by using a software program called DriveScrubber to destroy

10 emails that he had allegedly exchanged with cooperating witness Steve Swanger.  The

government showed that the 10 emails currently existed on only one of four examined devices,

arguing that Mr. Katakis had effectively used DriveScrubber to delete the emails on the other two

---

[2] Declaration of Elliot R. Peters in Support of  Motion for Judgment of Acquittal on Count Three
("Peters Decl.") (Dkt. 288), Ex. 1 (Superseding Indictment, Count Three, ¶ 5, Dkt. 136).

[3] *See, e.g.*, Peters Decl., Ex. 2 (Gov't Ex. 2634) (illustrating that the government's obstruction
theory was focused on Mr. Katakis's alleged destruction of emails on his Dell, Mr. Swanger's
Asus, and the mail server, and that Mr. Swanger's Dell was relevant only to show that the 10
emails existed).

computers and the mail server.  Mr. Katakis was entitled to, and did, rely on the government's representations of its theory in preparing his defense.

According to the government's expert report and summary of the testimony of Agent Medlin, furnished pursuant to Fed. R. Crim. P. 16(a)(1)(G), Agent Medlin performed "an in-depth examination into the existence and use of evidence elimination software [DriveScrubber]."[4]  The report focused exclusively on the use of this software, which had been installed on four examined devices—Mr. Katakis's Dell computer, a mail server in his office, and Mr. Swanger's two work computers, an Asus and another Dell.  The report described a search on these computers and server for the 10 emails selected by the government.  The report made no findings as to how or whether DriveScrubber could erase individual email messages.  Nevertheless, Agent Medlin concluded that because he was able to recover the 10 emails on Mr. Swanger's Dell, but not on the other computers and mail server, DriveScrubber must have been used on them to destroy evidence.  Because the emails existed on Mr. Swanger's Dell, the focus of the government's theory, and the defense's response, became the alleged destruction of evidence on the other two computers (the Asus and Mr. Katakis's Dell) and the mail server.  Moreover, Agent Medlin's characterization of DriveScrubber as "evidence elimination software" underscored that the government's theory rested on alleged destruction of evidence.

The government's trial brief describes the alleged destruction in a similar way.  The government advised the Court and Mr. Katakis that it would prove obstruction through evidence showing "that a scrubbing program was used to permanently erase, or 'scrub,' emails between Katakis and Steve Swanger related to the charged bid rigging and fraud."[5]

---

[4] *Id.*, Ex. 3 (Federal Bureau of Investigation, Digital Evidence Laboratory, Report of Examination) at 3-5.

[5] *Id.*, Ex. 4 (Trial Brief of the United States, Dkt .196) at 5.

3

In its opening statement, the government again focused on this alleged destruction of email using DriveScrubber:

> The evidence will show that Andrew Katakis deleted emails and computer files and installed a computer scrubber program to try to scrub, or wipe away, any traces….

> You'll hear the testimony of an FBI agent, who is an expert in computer forensics.  You will hear that the FBI has ways to recover emails and computer records, even after they've been deleted.  But you will also hear what computer scrubbing programs are, how they can be used to wipe, or scrub, a hard drive so that even the FBI cannot recover those deleted emails and computer files.  More specifically, you'll hear about a program called DriveScrubber, and you will see what the FBI agent found. [6]

The government explained that, on the weekend after Mr. Katakis received a letter informing him about a grand jury subpoena of his bank records, DriveScrubber was installed four times on computers in his offices.  The government concluded that, because the FBI agent was able to recover a specific email from Mr. Swanger's Dell, Mr. Katakis must have used DriveScrubber on his computer and the mail server to destroy evidence. [7]  Accordingly, the existence of evidence on Mr. Swanger's Dell proved that Mr. Katakis had destroyed evidence on the other computers and the server.

### 3.    Trial testimony

At trial, the government continued to pursue this same theory.  Mr. Swanger testified that on September 4, 2010, he saw Mr. Katakis  install DriveScrubber on Mr. Swanger's Asus computer, "clic[k] and mov[e] things around," [8] and then also "click[]" emails on Mr. Swanger's

---

[6] *Id.*, Ex. 5 (2/5/14 Tr). at 378:12-379:6.

[7] *Id.*, Ex. 5 (2/5/14 Tr.) at 378:12-380:5.

[8] *Id.*, Ex. 6 (2/19/14 Tr.) at 2144:15-2145:3.  Mr. Swanger already had printed out and taken home seven or eight emails relating to partner buyouts, because Mr. Katakis had made "a comment" about Mr. Swanger and his brother Ken "getting rid of" their hard drives, and Mr. Swanger wanted to preserve "some emails that I had remembered that stuck out in my mind."  *Id.* (2/19/14 Tr.) at 2139:13-2140:18.

Dell computer until he "pushed delete."[9] Mr. Swanger admitted that he was "standing over off to

the side,"[10] "wasn't real clear on what [Katakis] was clicking or doing,"[11] and "didn't pay

attention closely."[12] Mr. Swanger subsequently left the office, and when he later returned, almost

all of the emails appeared to have been destroyed.[13] ("Appeared to be" is the right phrase,

because it is undisputed that the emails were not, in fact, destroyed. Agent Medlin testified that

Mr. Swanger's Dell was the only computer that contained the 10 emails.)[14] During his testimony,

Mr. Swanger identified no specific emails or any specific document on either computer that he

believed to have been deleted by Mr. Katakis.

Consistent with his expert witness report, Agent Medlin's trial testimony focused on Mr.

Katakis's alleged use of DriveScrubber. Agent Medlin testified that DriveScrubber had been

installed on the three computers and mail server[15] on September 3 and 4, 2010.[16] Initially, Agent

Medlin testified that double-deleting[17] emails moves them out of the protected space on the hard

---

[9] *Id.* (2/19/14 Tr.) at 2145:4-24.

[10] *Id.* (2/19/14 Tr.) at 2143:25.

[11] *Id.* (2/19/14 Tr.) at 2144:1-2.

[12] *Id.* (2/19/14 Tr.) at 2145:2.

[13] *Id.* (2/19/14 Tr.) at 2146:16-24.

[14] *Id.*, Ex. 7 (2/20/14 Tr.) at 2414:8-2415:5, 2417:23-2418:7.

[15] DriveScrubber was downloaded and installed on Mr. Swanger's Dell and Asus computers as part of a suite of programs called System Mechanic. *Id.*, Ex. 8 (2/21/14. Tr.) at 2462:10-16. Mr. Swanger paid for the suite with his own credit card. *Id.* (2/21/14 Tr.) at 2465:4-2466:2.

[16] *Id.*, Ex. 7 (2/20/14 Tr.) at 2428:5-2429:7; Ex. 8 (2/21/14 Tr.) at 2444:6-17, 2449:16-2450:1, 2451:16-2452:3. DriveScrubber also was installed on Michael Tims' Dell computer on September 15, 2010. *Id.*, Ex. 8 (2/21/14 Tr.) at 2453:16-24. Global Discoveries IT Director Lee Craddock testified that he sometimes used a free version of DriveScrubber to cleanse a server's hard drive of Global-related files before returning it to a hosting company. But he was angered to learn that a paid version of DriveScrubber had been downloaded to several computers in the office without his prior authorization. He brought it up with Mr. Katakis, who did not seem surprised. *Id.*, Ex. 9 (2/25/13 Tr.) at 2616:17-2622:21.

[17] As used here, "double deletion" means deleting an item once to move it to the deleted-items folder, and then deleting the item from the deleted-items folder as well. *See id.*, Ex. 7 (2/20/14 Tr.) at 2403:24-2404:18.

816814.02

drive that is allocated to a program like Microsoft Outlook and into "free space,"[18] where the

email remains intact until it is eventually overwritten.[19]  An email is fully recoverable even after

single- or double-deletion, as long as no part of it has been overwritten.[20]  DriveScrubber can

overwrite emails that have been moved to free space and render them unrecoverable.  Agent

Medlin explained that he had tested this theory by using DriveScrubber to wipe the free space on

a thumb drive.  He found that DriveScrubber overwrote with zeros the files that he had deleted

from the drive.[21]

Agent Medlin also testified that he found the 10 emails[22] selected by the government in

the deleted-items file on Mr. Swanger's Dell, but located none of them on the other two

computers and the mail server, even though each of those emails identified both Mr. Swanger and

Mr. Katakis as a sender or recipient.[23]  Agent Medlin inferred that, based on the presence of those

10 emails on the Dell and their absence from the other two computers and mail server, Mr.

Katakis must have double-deleted the 10 emails to move them into free space, where

DriveScrubber overwrote them:

> Q.     Do you have an opinion as to why you found no trace of any
> of those [10] emails on those [three] computers?
>
> A.     I do.

---

[18] "Free space" is "that part of the computer that is not being used at the time. . . .  It has capacity
available for data, but no data is occupying that space at the time."  *Id.* (2/20/14 Tr.) at 2404:24-
2405:7.  By contrast, when one installs a program like Microsoft Outlook on a computer, space is
allocated to that program.  This allocated space is not "free."  *Id.*, Ex. 10 (2/26/14 Tr.) at 2977:25-
2978:14.

[19] *Id.*, Ex. 7 (2/20/14 Tr.) at 2405:8-18.

[20] *Id.* (2/20/14 Tr.) at 2405:19-2406:1 (referencing Def. Ex. QQQQQ, a Microsoft document
explaining how to retrieve double-deleted emails).

[21] *Id.* (2/20/14 Tr.) at 2424:18-2426:22.

[22] The "10 emails" are Government Exhibits 112, 141, 142, 145, 150, 157, 166, 168, 172, and
175.  *See id.* (2/20/14 Tr.) at 2407:15-20.

[23] *Id.* (2/20/14 Tr.) at 2414:11-18, 2416:12-2418:7.

816814.02

Q.      What is that opinion?

A.      In my opinion these emails were deleted and over-written.

Q.      Could you explain how you reached that conclusion?

A.      Well, when I searched the computers and didn't find the emails . . . they were obviously deleted from the computers.[24]

Agent Medlin opined that it was unlikely that all 10 emails would have been overwritten in the normal course of time by a "natural action" of all three computers.  Thus, he inferred that the emails were over-written by "user action," meaning that "someone went to the computer[,] installed a program designed to overwrite data so it could not be recovered[,] and executed that program."[25]  Agent Medlin only examined those 10 emails[26] and offered no evidence that any other emails were missing.

The defense prepared to meet and rebut this theory, which it did successfully.  Defense expert, former FBI Supervisory Special Agent Don Vilfer testified that it was not possible that DriveScrubber had deleted emails as Agent Medlin had testified.[27]  Mr. Vilfer's testing and analysis showed that, while it is possible to use DriveScrubber to wipe out data on a computer's free space, deleting—or even double-deleting—an email inside the Microsoft Outlook enterprise database does not move the email into free space.  Thus, DriveScrubber has no effect on emails in an Outlook environment, including those that may have been deleted or double-deleted.

Mr. Vilfer's testimony demolished the government's obstruction theory.  Agent Medlin was recalled to the stand during the government's rebuttal case, where he retracted his testimony that formed the basis for the entire obstruction charge.  Agent Medlin testified that:

- Double-deleting an email inside the Microsoft Outlook enterprise database does ***not*** move

---

[24] *Id.* (2/20/14 Tr.) at 2418:17-2419:1.

[25] *Id.* (2/20/14 Tr.) at 2419:7-2420:9.

[26] *Id.* (2/20/14 Tr.) at 2407:15-23, 2409:6-11.

[27] *Id.*, Ex. 11 (2/27/14 Tr.) at 2993:11-3004:11.

7

816814.02

the email into free space where DriveScrubber can overwrite it.  Rather, the email remains within the Microsoft enterprise database.[28]

- DriveScrubber **cannot** erase **any** emails inside the Microsoft Outlook enterprise database.[29]  *A fortiori*, it cannot be used to reach inside that database to selectively delete any particular email.[30]

### B.   When its initial theory failed, the government retreated to a new theory of obstruction, for which it presented insufficient evidence.

Once Mr. Vilfer's testimony made clear that DriveScrubber could not be used to delete emails, and Agent Medlin admitted that Mr. Vilfer had been right, and he had been wrong, the government could have abandoned its obstruction case and proceeded on Counts One and Two. But, it chose instead to invent a new and different evidentiary basis for its obstruction charge. This new theory had not appeared in Agent Medlin's expert report, in the government's trial brief, or in its opening statement.  It is still not clear what evidence the government believes supports it.

After the defense rested and before the case went to the jury, Mr. Katakis's counsel argued orally to the Court that, based on Agent Medlin's retractions, it should grant Mr. Katakis a Rule 29 acquittal on Count 3.[31]  The government's response was two-fold.  It tried to recharacterize Agent Medlin's testimony.  The Court interjected to clarify that in fact Agent Medlin had retracted his testimony.[32]  The government also argued that all it took for Mr. Katakis to obstruct justice was "one press of the delete key," with double-deletion merely being "additional proof" that he "tried to permanently erase those emails on top of deleting them."[33]

---

[28] *Id.* (2/27/14 Tr.) at 3076:18-3078:18, 3084:6-23.
[29] *Id.* (2/27/14 Tr.) at 3084:6-23.
[30] *Id.* (2/27/14 Tr.) at 3088:16-20.
[31] *Id.* (2/27/14 Tr.) at 3102:24-3104:4.
[32] *Id.* (2/27/14 Tr.) at 3111:1-3112:14.
[33] *Id.* (2/27/14 Tr.) at 3104:7-13.

816814.02

Suddenly, the government was interested only in the alleged destruction of evidence on Mr. Swanger's Dell, the one computer that had previously been unimportant to proving obstruction, except to the extent that it *contained* the 10 emails. Without providing any specifics, the government suggested that there was evidence in the record that, after learning of the grand jury subpoena, Mr. Katakis had deleted emails on Mr. Swanger's Dell so that they could not be viewed by investigators. It advanced its new theory, despite the fact that Mr. Swanger identified no specific emails (including any of the 10) or any specific document that he believed to have been deleted by Mr. Katakis. Nor did Mr. Swanger furnish any evidence that the DriveScrubber program overwrote or otherwise affected a single email; and Agent Medlin himself confirmed that that "cannot happen."[34] The Court took the motion under submission.

In closing, the government both advanced its new obstruction theory and attempted to resurrect its initial failed theory—that because the 10 emails were recovered on Mr. Swanger's Dell, Mr. Katakis must have used DriveScrubber to destroy evidence:

> You heard Agent Medlin testify that he searched for ten emails. . . . He recovered them from Steve Swanger's Dell computer in the deleted items folder. He examined the metadata and he showed you how he verified that those emails were sent, received, opened, and that they passed through the GD mail server. That means there should have been a copy in at least three places, the sender, the recipient and the GD mail server. Andrew Katakis was on all of those emails. But, Agent Medlin didn't find any trace of them anywhere on Andrew Katakis' computer or the GD mail server, not in the inbox, not in the deleted items file, not in the PST files, not in the Exchange Database, not in the free space. Nowhere. Why weren't these ten emails, or any part of them, on Andrew Katakis' computer? The only reasonable explanation is that Andrew Katakis deleted them.[35]

But absent the discredited DriveScrubber theory, there was no evidence that Mr. Katakis had deleted any emails on these other computers, much less that he had done so after learning of

---

[34] *Id.* (2/27/14 Tr.) at 3088:16-20.

[35] *Id.*, Ex. 12 (3/3/14 Tr.) at 3236:15-3237:11.

9

816814.02

the grand jury subpoena, which allegedly provided circumstantial evidence of his intent.  The government's argument about a reasonable explanation had no legitimate evidentiary basis.

And yet, the government's misdirection about DriveScrubber in summation did not stop there.  The government next urged the jurors not to let the DriveScrubber testimony "distract" you because "you don't have to find that DriveScrubber was actually run, or what DriveScrubber could or could not do.  All you have to do is find that Andrew Katakis hit the delete button. That's it.  It's that simple."[36]

In fact, it's not that simple.  Deleting emails is not a crime, unless accompanied by the requisite intent.  Without evidence of when or even how emails were deleted, the government (and the jury) had no basis for inferring the requisite intent.  And although the government knew that Mr. Vilfer's testimony proved that DriveScrubber did not permanently erase any emails, it concluded by emphasizing the importance of evidence it knew to be false:

> The fact that DriveScrubber was installed . . . is important because it shows what was going through Andrew Katakis's mind. He bought this program[37] . . . with the intent to buy a program that would permanently erase.  Those emails were deleted, and there is only one reasonable explanation.  Andrew Katakis had the motive and the means to erase the evidence against him, to keep his hands clean, just like he tried to do with his involvement with the rounds. But again, he got caught.[38]

Through careful but dishonest juxtaposition, the government concluded its initial summation by suggesting that Mr. Katakis had destroyed emails by using DriveScrubber, something it knew to be false.

Compounding its misstatements, the government returned to DriveScrubber in its rebuttal

---

[36] *Id.* (3/3/14 Tr.) at 3240:1-7.

[37] The government failed to mention that its evidence also showed that Mr. Swanger's credit card was used to buy a software suite including DriveScrubber.  *See id.*, Ex. 8 (2/21/14 Tr.) at 2447:20-2448:8.

[38] *Id.*, Ex. 12 (3/3/14 Tr.) at 3240:6-16.

816814.02

argument.  The government reminded the jury that both Agent Medlin and Mr. Vilfer had testified that they could not locate the 10 emails on Mr. Katakis's computer or the mail server.  It then told them that the only reasonable answer is that Mr. Katakis must have deleted the emails.[39]  The government continued: Mr. Katakis purchased DriveScrubber, he downloaded it, he installed it.  Did he run it?  Well, if he didn't run it, there should have been some remnant of the emails somewhere on Mr. Katakis's computer, but there was none.[40]  The government went on to posit: Why is there no trace of these ten emails on Mr. Katakis's computer? Or Steve Swanger's Asus computer? Or the GD mail server?  According to the government, there was only one reasonable answer, Mr. Katakis deleted them.[41]  And yet, there was no evidence of this.

## III.    ARGUMENT

### A.    The standards governing this motion and remedy of acquittal

Federal Rule of Criminal Procedure 29(a) provides that the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  After viewing the evidence in the light most favorable to the government, if no rational juror could have concluded beyond a reasonable doubt that the evidence was sufficient to convict the defendant, the Court must grant acquittal.  *United States v. Lopez*, 484 F.3d 1186, 1200-01 (9th Cir. 2007).

The jury was instructed that, in order for Mr. Katakis to be found guilty of obstruction of justice, the government must prove each of the following elements beyond a reasonable doubt:

- *First*, that defendant Katakis knowingly altered, destroyed, or concealed electronic records or documents;

---

[39] Supplemental Declaration of Elliot R. Peters in Support of Motion for Judgment of Acquittal ("Supp. Peters Decl."), Ex. 14 (3/5-7/14 Tr.) at 3505:7-11.

[40] *Id.* (3/5-7/14 Tr.) at 3505:14-23.

[41] *Id.* (3/5-7/14 Tr.) at 3506:22-25.

- **Second**, that defendant Katakis acted with the intent to impede, obstruct, or influence an investigation that he either knew of or contemplated; and

- **Third**, that the investigation was about a matter by or within the jurisdiction of the United States Department of Justice or Federal Bureau of Investigation.[42]

Mr. Katakis's burden on this Rule 29 motion, therefore, is to show that—even viewing the evidence in the light most favorable to the government—any rational juror would entertain at least a reasonable doubt as to whether Mr. Katakis (1) knowingly altered, destroyed, or concealed the 10 emails (2) with the intent to impede, obstruct, or influence a DOJ or FBI investigation that he either knew of or contemplated.   As demonstrated below, Mr. Katakis has met that burden.

By this motion, Mr. Katakis also addresses due process violations in the form of a prejudicial variance between the government's original discredited obstruction theory and the new theory it sought to prove and prosecutorial misconduct.  While these due process incursions (among others) will be addressed in Mr. Katakis's motion for a new trial under Federal Rule of Criminal Procedure 33 (and indeed warrant a new trial), they are properly considered here given their interconnectedness with the government's failure to prove obstruction of justice. Furthermore, under circumstances such as here, the remedy for such incursions is either acquittal under Rule 29 or its functional equivalent—dismissal of the charge.  *See, e.g., United States v. Dellosantos*, 649 F.3d 109, 125-26 (1st Cir. 2011) (granting acquittal and reversing district court's denial of Rule 29 motion based on prejudicial variance between the crime charged and the

---

[42] Peters Decl., Ex. 13 (Jury Instruction No. 20, Dkt. 268) at 26.  The statute of conviction, 18 U.S.C. § 1519 imposes a fine and a prison sentence of up to 20 years on "[w]hoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States . . . or in relation to or contemplation of any such matter . . . ."

evidence at trial)[43]; *United States v. Lewis*, 368 F.3d 1102, 1107 n.5 (9th Cir. 2004) (prosecutorial misconduct justifies dismissal where the government's conduct caused substantial prejudice and was flagrant in its disregard for the limits of appropriate professional misconduct).[44]

### B. Any rational juror would entertain a reasonable doubt as to the government's first obstruction theory.

Even the government appears to acknowledge that the theory described in the Superseding Indictment, discussed in Agent Medlin's report, detailed in the trial brief, previewed in the opening, and advanced in its trial exhibits, failed. The jury had insufficient evidence to convict on the theory that DriveScrubber had been used to delete the 10 emails. For while the government originally offered evidence that DriveScrubber was installed in early September, just after Mr. Katakis had allegedly learned of a grand jury subpoena, and was used to delete 10 emails allegedly exchanged between Mr. Swanger and Mr. Katakis, that evidence was not only called into question, it became undisputed that it was just plain wrong. DriveScrubber didn't delete any of those emails. Mr. Vilfer so testified and Agent Medlin eventually agreed with him. Indeed, since there was no evidence in the record explaining what happened to these 10 emails, Mr. Vilfer's unrebutted testimony that it appears that Mr. Swanger fabricated those emails stands as the most likely explanation.[45] But regardless, the government's theory and evidence on the obstruction charge was proven wrong.

---

[43] *See also Epstein v. United States*, 174 F.2d 754, 763 (6th Cir. 1949) (district court erred in denying judgment of acquittal based on fatal variance between the allegations in indictment and proof).

[44] *See also United States v. Kojayan,* 8 F.3d 1315, 1324 (9th Cir. 1993) (holding that in determining whether to dismiss an indictment as a remedy for prosecutorial misconduct, the Court must consider not only the need to assure that one obtained a fair trial but also to assure "that the circumstances that gave rise to the misconduct won't be repeated in other cases").

[45] Peters Decl., Ex. 11 (2/27/14 Tr.) at 3056:22-3057:20 ("[I]t's a suspicious circumstance to me that they are only on Mr. Swanger's computer, and that the e-mails, in some instances, lack header information as to their origin. . . . The only explanation would be that they had been fabricated on his computer from other e-mails.").

816814.02

**C.      Any rational juror would entertain a reasonable doubt as to the government's surprise second obstruction theory.**

Rather than dismissing the obstruction Count when its proof fizzled, the prosecutors charged ahead, redefining it in general terms and asking the Court to permit the charge to go the jury.  While the Court permitted the charge to go to the jury, and the jury convicted, the evidence of this new theory is far too flimsy to support a conviction.

During argument on the oral Rule 29 motion and in its closing argument to the jury, the government argued that all it took for Mr. Katakis to obstruct justice was "one press of the delete key."[46]  This was an apparent reference to Mr. Swanger's testimony that he had seen Mr. Katakis press the delete key.  The government misrepresented that testimony in closing.  Mr. Swanger said he saw Mr. Katakis "checking boxes" on Mr. Swanger's Dell.  And even though a Microsoft document regarding deleted emails was introduced at trial,[47] there is no evidence in the record that emails can be deleted in Outlook by checking boxes.  Mr. Swanger's testimony must also be viewed in context:  he was discussing the use of DriveScrubber, which cannot be used to delete emails.  The government's one-press-of-the-delete-key theory also contradicted the evidence of its original obstruction theory—specifically, the existence of those 10 emails on the Dell computer, meaning that they ***had not been deleted or destroyed***.  Other than this largely incoherent snippet of testimony from Mr. Swanger, the government offered no forensic evidence establishing the timing of supposed deletion on the Dell computer, or even the identity of the user or users who performed such deletion.[48]

Moreover, the government presented no evidence whatsoever that Mr. Katakis—with

---

[46] *Id.* (2/27/14 Tr.) at 3104:7-10.

[47] *Id.* (2/27/14 Tr.) at 2995:13-2996:5.

[48] In fact, Mr. Craddock testified that multiple people had the ability to monitor and delete emails in any employee's email account, even without the employee's knowledge.  *See id.*, Ex. 9 (2/25/14 Tr.) at 2609:1-2610:19.

14

"one press of the delete key"—removed emails from the other two computers and mail server, where, according to the government, the 10 emails at issue could not be found.[49]   The government's inference that DriveScrubber was used to do so was utterly discredited.   Indeed, the government offered no evidence that any other email on any other server or computer had been deleted after Mr. Katakis allegedly learned of the grand jury subpoena.   It also introduced no evidence regarding how long "natural action" would take to overwrite any emails.

Based on the government's failure to establish critical details of its one-press-of-the-delete-key theory, the government could not prove the requisite intent.  Email deletion is a routine part of our everyday lives.  Evidence that, at some point in time, emails had been managed by deleting or double-deleting is insufficient because that conduct is not criminal.  *See United States v. Stevens*, 771 F. Supp. 2d 556, 561 (D. Md. 2011) (finding that Section 1519 "imposes criminal liability only on those who were conscious of the wrongfulness of their actions").  "To hold otherwise would allow § 1519 to reach inherently innocent conduct, such as a lawyer's instruction to his client to withhold documents the lawyer in good faith believes are privileged." *Id.*  It is hardly surprising to learn that every email on every computer in Mr. Katakis's office was not saved.  In fact, Mr. Vilfer testified that he located tens of thousands of double-deleted emails, including over 18,000 double-deleted emails on Mr. Katakis's Dell computer.[50]  To support an obstruction charge, the government would have needed to prove that emails were destroyed in response to an awareness or concern about the investigation. *See United States v. Yielding*, 657 F.3d 688, 711 (8th Cir. 2011).  They failed to do so.  Accordingly, no rational juror could conclude that Mr. Katakis had the requisite intent to obstruct justice.

---

[49] *See, e.g.*, *id.,* Ex. 2 (Gov't Ex. 2634, which lists the 10 emails as present on Mr. Swanger's Dell computer, but not present on the other two computers and the mail server).

[50] *Id.*, Ex. 11 (2/27/14 Tr.) at 2996:13-2998:6.

**D.**   **The government's last-minute change in theory on the obstruction charge was a prejudicial variance warranting acquittal.**

In a criminal case, due process requires that allegations and proof must correspond. This bedrock principle ensures that the accused is informed of the charges against him so that he can present his defense and not be taken by surprise by the evidence introduced at the trial. *See Russell v. United States*, 369 U.S. 749, 763-64 (1962); *Berger v. United States,* 295 U.S. 78, 82 (1935). A variance between the charged crime and evidence introduced at trial warrants acquittal when it affects the "substantial rights" of the accused, including where surprise at trial deprives him of the opportunity to meet the prosecutor's case. *See Dellosantos,* 649 F.3d at 124-25 (granting acquittal under Rule 29 because defendants were unfairly prejudiced by variance between indictment and evidence introduced at trial, in that defendants were deprived of their rights to prepare an effective defense and avoid surprise). As *Dellosantos* recognized, variance should be considered in the context of a defendant's challenge to the sufficiency of evidence where the evidence at issue differs from facts alleged in the indictment. *Id.* at 116-26.[51]

Here, the government's eleventh-hour change in theories constituted a highly-prejudicial variance. Mr. Katakis prepared and successfully refuted the government's disclosed theory of obstruction, only to have the government ambush him at the end of trial. The Superseding Indictment, refined by the government's expert report, trial exhibits, trial brief, opening statement, and witness testimony, all focused on the alleged use of DriveScrubber to delete emails on the mail server and the two computers other than Mr. Swanger's Dell computer. Because the government had repeatedly disclosed the factual basis of its obstruction charge to be Mr. Katakis's alleged destruction of the 10 emails on this mail server and other two computers (specifically, Mr. Katakis's Dell and Mr. Swanger's Asus), Mr. Katakis made no effort to

---

[51] While Mr. Katakis believes that the variance here renders the evidence insufficient and warrants acquittal under Rule 29, at a minimum, variance (among other due process violations) demands a new trial, as will be addressed in Mr. Katakis's Rule 33 motion.

816814.02

examine the effect of ordinary deletion or double-deletion of emails on Mr. Swanger's Dell.  Had the defense known that this would become the crux of the charge, it would have been prepared to address it, including by focusing its efforts on performing a forensic examination of Mr. Swanger's Dell and its Outlook files.  But this new theory did not emerge until after the defense had already rested, making it impossible to defend against it.

In *United States v. Adamson*, 291 F.3d 606, 615-16 (9th Cir. 2002), the Ninth Circuit found a fatal variance based on differences between the misrepresentation specified in the indictment and the misrepresentation shown at trial.  The indictment in *Adamson* charged the defendant with misrepresenting the fact of upgrading certain computers, but the court's instructions allowed the jury to convict the defendant of wire fraud if it found that the defendant had misrepresented how the servers had been upgraded.   The Ninth Circuit held that this variance was fatal because it affected the substantial rights of the defendant.  *Id*. at 616.  The court reasoned that one of the primary purposes of an indictment is to inform a defendant of "what he is accused of doing in violation of the criminal law, so that he can prepare his defense."  *Id*.  The Ninth Circuit concluded that the indictment "not only failed to inform the defendant of the actual misrepresentation that would be shown at trial, but it also affirmatively misled the defendant and obstructed his defense at trial."  *Id.*; *see also United States v. Choy*, 309 F.3d 602, 607 (9th Cir. 2002) (holding that because the indictment and the evidence presented at trial represented "two distinct sets of facts", the second of which could not be anticipated by defendant, conviction constituted a fatal variance).

Here, the government affirmatively misled Mr. Katakis to believe that the obstruction charge was based on the deletion—*i.e.*, destruction of electronic records, including by "install[ing] and us[ing] a software program that *overwrote deleted electronic records and*

17

*documents* so that they could not be viewed or recovered."[52]  Mr. Katakis detrimentally relied on

the charges in the Superseding Indictment insofar as he prepared his defense around the issue of

the destruction of emails using DriveScrubber on the two computers and the mail server at the

company where that alleged destruction occurred.  As reinforced by the government's trial brief,

opening statements, and expert disclosures, Mr. Swanger's Dell computer was relevant (under the

government's theory) only to demonstrate that 10 emails existed at some point in time.  Thus, the

Dell computer was a repository of electronic records that were not destroyed.  At trial, however,

when its DriveScrubber theory imploded, the government impermissibly shifted to a separate and

distinct set of facts to support its obstruction charge, namely that the Dell computer now

evidenced electronic records that were altered or concealed.  The government's variance not only

changed focus to a new computer where the evidence of obstruction purportedly existed—Mr.

Swanger's Dell, but it also shifted its theory from one of destruction (*i.e.*, deletion) to alteration or

concealment.  Indeed, contrary to what the indictment says about destruction of emails, those 10

emails could be "viewed or recovered" in the trash folder of Mr. Swanger's Dell.  Mr. Katakis

could not have anticipated this new set of facts elicited only at trial.  As this variance affected Mr.

Katakis's substantial rights and renders the obstruction charge unsupported by any evidence, this

Court should grant acquittal.

### E.    Dismissal is also warranted based on the government's deliberate and repeated reliance on false inferences.

Finally, even assuming *arguendo* that there was sufficient evidence of obstruction, or that

no fatal variance took place, the Court should still dismiss the obstruction conviction based on

prosecutorial conduct.  *See Lewis*, 368 F.3d at 1107 n.5 (prosecutorial misconduct justifies

dismissal where the government's conduct caused substantial prejudice and was flagrant in its

disregard for the limits of appropriate professional misconduct).  Here, the government initially

---

[52] Peters Decl., Ex. 1 (Superseding Indictment, Count Three, ¶ 5, Dkt. 136) (emphasis added).

elicited testimony concerning the use of DriveScrubber to destruct emails in Outlook that it knew, or at a minimum, should have known to be false. But even after Agent Medlin retracted his false testimony, the government—in both its initial and rebuttal closing arguments—continued to press its theory that Mr. Katakis used DriveScrubber to delete the 10 emails from Mr. Katakis's Dell computer, the Asus, and the mail server. There was no evidence of this. As the Ninth Circuit has held, this kind of knowing reliance on a false inference constitutes prosecutorial misconduct. *See, e.g., United States v. Reyes,* 577 F.3d 1069, 1077 (9th Cir. 2009*)* (reversing defendant's conviction due to prosecutorial misconduct in making false assertion of material fact in closing argument). The government's false statements during closing argument constituted plain error. *See United States. v. Artus*, 591 F.2d 526, 528 (9th Cir. 1979) (holding that prosecutor's misstatements of law and introduction of evidence not in the record during closing argument, which undermined one of the defendant's defenses, was plain error) (citations omitted). Indeed, in this case, the government's unflagging reliance on theories proven to be false amounted to flagrant misconduct warranting dismissal of the obstruction charge. *See Lewis*, 368 F.3d at 1107 n.5; *Kojayan,* 8 F.3d 1315 at 1324 (in determining whether to dismiss indictment for prosecutorial misconduct, the Court must consider not only the need assure that one obtained a fair trial but also to assure "that the circumstances that gave rise to the misconduct won't be repeated in other cases").[53]

Dismissal of the Count Three is proper in this case because the government acted egregiously, especially in its closing remarks. On February 7, 2014, the government received the defense's expert report of Mr. Vilfer, explaining that, while DriveScrubber wipes out data on a computer's free space, deleting, or even double-deleting, an email inside the Outlook database

---

[53] While Mr. Katakis addresses misconduct here because he believes that acquittal or dismissal is the only adequate remedy for the government's transgressions, his Rule 33 motion will also explain why the government's conduct—at a minimum—warrants a new trial.

CORRECTED NOTICE OF MOTION AND MEMORANDUM
Case No. 2:11-CR-0511 (WBS)

816814.02

does not move the email into free space.  Nearly two weeks later, on February 20, 2014, the government—now with reason to question the veracity of this theory based upon the defense's report—elicited testimony from Agent Medlin that Mr. Katakis had used DriveScrubber to destroy emails.  At trial, the defense proved this theory to be false, causing Agent Medlin to retract his testimony in the government's rebuttal case.  And yet, despite all of this the government resurrected its failed DriveScrubber theory during closing argument.  It devoted a significant portion of its closing argument to this theory, arguing that DriveScrubber was installed on these devices; that there should have been—but there was not—a copy of the 10 emails on Mr. Katakis's computer, Mr. Swanger's Asus, and the mail server; that Agent Medlin could not find even a trace of these emails; and "only reasonable explanation is that Andrew Katakis deleted them"[54]

During rebuttal argument, the government added that just a hit of the delete key amounted to obstruction of justice[55], effectively writing the intent requirement out of the statute.  *See Yielding*, 657 F.3d at 711 (finding that Section 1519 "does not impose liability for 'knowingly . . . destroy[ing] . . . any . . . document . . . in . . . contemplation of any [federal] matter,' *without* an intent to impede, obstruct, or influence a matter.  If it did, then the statute would forbid innocent conduct such as routine destruction of documents that a person consciously and in good faith determines are irrelevant to a foreseeable federal matter.") (emphasis in original).  The government further compounded its misdirection during rebuttal, melding its original DriveScrubber theory with its new one-press-of-the-delete-key theory.  The government asked: why is there no trace of the 10 emails on Mr. Katakis's computer or the mail server? The only reasonable answer, said the government, is that Mr. Katakis deleted those emails.  How,

---

[54] Peters Decl., Ex. 12 (3/3/14 Tr.) at 3236:13-14.

[55] Supp. Peters Decl.., Ex. 14 (3/5-7/14 Tr.) at 3507:1-6.

816814.02

according to the government, did Mr. Katakis do that?  He purchased DriveScrubber, he downloaded it, he installed it.[56]  The government continued, if he didn't run DriveScrubber, there should have been some remnant of the 10 emails on Mr. Katakis's computer; but there was none.[57]  This closing heavily and impermissibly relied on false statements.

The government's misstatements of law and repeated and deliberate telling of a story that it knew to be false during closing argument rendered the trial constitutionally unfair.  *See Reyes,* 577 F.3d at 1077-79 ("[T]he [false] statements were made during closing arguments . . . and closing statements from the prosecution matter a great deal.") (internal citation and quotations omitted); *see also Kojayan*, 8 F.3d 1315 at 1323 ("Evidence matters; closing argument matters; statements from the prosecutor matter a great deal.").  And while "it is certainly within the bounds of fair advocacy for a prosecutor, like any lawyer, to ask the jury to draw inferences from the evidence that the prosecutor believes in good faith might be true  . . .  it is decidedly improper for the government to propound inferences that it knows to be false, or has very strong reason to doubt . . . ."  *United States v. Blueford*, 312 F.3d 962, 968 (9th Cir. 2002); *see also Berger,* 295 U.S. at 88 ("[The United States Attorney] may prosecute with earnestness and vigor—indeed, he should do so.  But, while he may strike hard blows, he is not at liberty to strike foul ones.").  Here the government's deliberate deception as to Mr. Katakis's use of DriveScrubber to delete emails (a theory which Agent Medlin himself recanted) and misstatements of law violated Mr. Katakis's right to a fair trial and warrant outright dismissal of the obstruction charge.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court should grant Mr. Katakis's Motion for Judgment of Acquittal on Count Three.

---

[56] *Id.* (3/5-7/14 Tr.) at 3505:14-19.

[57] *Id.* (3/5-7/14 Tr.) at 3505:19-23.

1

2

3

Dated:  April 23, 2014                                    HIGGS FLETCHER & MACK LLP

/s/ Paul Pfingst

4            By:   *(as authorized on April 23, 2014)*
PAUL PFINGST

5

6

Dated:  April 23, 2014                                    KEKER & VAN NEST LLP

7

8            By:   */s/ Elliot R. Peters*
ELLIOT R. PETERS
STEVEN A. HIRSCH

9

Attorneys for Defendant
10           ANDREW B. KATAKIS

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CORRECTED NOTICE OF MOTION AND MEMORANDUM
Case No. 2:11-CR-0511 (WBS)