HIGGS FLETCHER & MACK LLP
PAUL J. PFINGST - #112967
401 West A Street, Suite 2600
San Diego, CA  92101-7913
Telephone:    619 236 1551
Facsimile:     619 696 1410

KEKER & VAN NEST LLP
ELLIOT R. PETERS - # 158708
STEVEN A. HIRSCH - # 171825
JENNIFER A. HUBER - # 250143
633 Battery Street
San Francisco, CA 94111-1809
Telephone:    415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
ANDREW B. KATAKIS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ANDREW B. KATAKIS, DONALD M. PARKER, ANTHONY B. JOACHIM, and W. THEODORE LONGLEY,<br><br>　　　　　Defendants. | Case No. 2:11-CR-0511 (WBS)<br><br>**REPLY IN SUPPORT OF ANDREW B. KATAKIS'S MOTION FOR JUDGMENT OF ACQUITTAL ON COUNT THREE OF THE SUPERSEDING INDICTMENT PURSUANT TO FED. R. CRIM. P. 29**<br><br>Date:　　　　May 5, 2014<br>Time:　　　　10:00 a.m.<br>Courtroom:　　5<br><br>Date Case Filed:　　December 7, 2011 |

REPLY ISO MTN FOR JUDGMENT OF ACQUITTAL ON COUNT THREE OF THE SUPERSEDING
INDICTMENT PURSUANT TO FED. R. CRIM. P. 29
Case No. 2:11-CR-0511 (WBS)

816981.02

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

## I.     INTRODUCTION

Double down, hard. That's the government's response to the charge that it used false "DriveScrubber" evidence at trial to convict Andrew Katakis of obstructing justice. That evidence was not only disproved by Katakis but actually retracted by the government's expert, FBI Agent Scott Medlin—yet the government's opposition brief once again gives center stage to Medlin's false testimony that Katakis must have used DriveScrubber to eliminate 10 e-mails from three computers.[1]

Even more remarkably, the government asserts—in contradiction to the record—that Agent Medlin did not retract his testimony but actually "confirmed and elaborated" upon it after Katakis's expert challenged his claim that deleting e-mails from Outlook ejects them into "free space," where DriveScrubber can then erase them permanently.

Thus, the government's reliance on Agent Medlin's false and discredited testimony has never been greater. By continuing to cling to that testimony, the government tacitly acknowledges that its belatedly asserted backup theory—the "just hit delete" theory—was both too little and too late: supported by too little evidence to exclude a reasonable doubt, and offered too late to avoid unfair surprise.

Under the just-hit-delete theory, the jury was urged not to let the DriveScrubber testimony "distract" them because "you don't have to find that DriveScrubber was actually run, or what DriveScrubber could or could not do. All you have to do is find that Andrew Katakis hit the delete button. That's it. It's that simple."[2] According to that theory, Katakis violated section

---

[1] As used here, "the three computers" refers to Mr. Katakis's Dell, Steven Swanger's ASUS, and the Global Discoveries mail server.

[2] *See* Declaration of Elliot R. Peters in Support of Motion for Judgment of Acquittal ("Peters Decl.") (Dkt. 288), Ex. 12 (3/3/14 Tr.) at 3240:1-7.

1519 by moving the 10 e-mails and other unspecified e-mails from the inbox on Steven Swanger's Dell to a folder reserved for "deleted" items (where they were in fact preserved for discovery by federal investigators).

Deleting e-mails is not only routine, but good IT practice.[3] Thus, the just-hit-delete theory depends entirely on the timing of the deletions—supposedly "within 48 hours" of Katakis's learning that a grand jury had subpoenaed his bank records. But the government offered no forensic evidence as to when any e-mails were deleted—something that would have been easy to establish—and Swanger's testimony not only did not identify the 10 e-mails as being among those deleted, but made no sense at all for various reasons detailed below, including the indisputable fact that deleting e-mails in Outlook does not involve "checking boxes." The government's eleventh-hour assertion of the just-hit-delete theory prevented Katakis's expert from developing any evidence concerning the timing of e-mail deletions on Swanger's Dell computer, and involved facts so central to the obstruction charge that it amounted to a fatal variance.

For these reasons and others discussed below, the Court should grant Katakis's Rule 29 motion for acquittal on Count 3 of the Superseding Indictment.

## II.  ARGUMENT

The Constitution "protects an accused against conviction except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 313-14 (1979). Accordingly, "the prevailing criterion for judging motions for acquittal in federal criminal trials" is whether "reasonable jurors must necessarily have [] a reasonable doubt as to guilt," in which case the

---

[3] *See, e.g.,* Declaration of Steven A. Hirsch in Support of Reply in Support of Motion for Judgment of Acquittal ("Hirsch Decl."), Ex. A (http://accc.uic.edu/answer/how-do-i-manage-and-reduce-exchange-mailbox-sizes) (last visited April 23, 2014) (recommending that Outlook users manage their inbox by deleting and clearing out deleted items weekly).

judge "must require acquittal, because no other result is permissible within the fixed bounds of jury consideration." *Id*. at 319 (internal citations omitted).

When a district court reviews the sufficiency of the evidence post-conviction, "*all of the evidence* is to be considered." *Id.* at 319 (emphasis in original); *see also United States v. Delgado-Uribe*, 363 F.3d 1077, 1082-83 (10th Cir. 2004).[4]  While Rule 29 requires the district court to view that evidence in the light most favorable to the government,[5] the obligation to consider "all of the evidence" under a reasonable-doubt standard makes it impossible to ignore Don Vilfer's testimony that DriveScrubber could not erase Outlook e-mails, or Agent Medlin's concession that Vilfer was right.  Yet the government's opposition pretends that these events never happened.

The truth is that the government's obstruction case never recovered from Medlin's retraction, which left it unable to explain how the 10 e-mails could be genuine and yet absent from the three computers.  And the government's last-minute switch to the just-hit-delete theory must fail due to insufficient proof and unfair surprise.

As explained below and in our opening brief, no rational juror could have concluded beyond a reasonable doubt that the evidence was sufficient to convict Katakis on Count Three, and the Court therefore must grant acquittal on that count.  *See Lopez*, 484 F.3d at 1200-01.

**A.    The government compounds its misconduct by distorting the record when responding to the charge that it presented false evidence to support its DriveScrubber theory.**

Our opening brief showed that the government committed misconduct when it knowingly relied on false evidence to obtain Katakis's conviction on Count Three.  As if to prove the point,

---

[4] *Cf. Escriba v. Foster Poultry Farms, Inc.*, 743 F.3d 1236, 1242 (9th Cir. 2014) ("Reviewing a renewed motion for JMOL"—the civil equivalent of a renewed Rule 29 acquittal motion—"requires scrutiny of the entire evidentiary record.").

[5] *United States v. Lopez*, 484 F.3d 1186, 1200-01 (9th Cir. 2007).

the government responds to that charge by misstating the record.

In the government's alternate universe, Agent Medlin's DriveScrubber testimony was "truthful and logical." When the defense expert Don Vilfer challenged Medlin's conclusions, Medlin simply "offered a more detailed explanation." Thus, Medlin "did not retract his earlier testimony; he confirmed it and elaborated on it."[6]

That account mangles the record. The reality is this: After former FBI Supervisory Special Agent Don Vilfer testified that DriveScrubber cannot erase deleted e-mails as Agent Medlin had asserted,[7] Agent Medlin was recalled to the stand, where he conceded that Vilfer was right and retracted his own testimony.

During the government's rebuttal case, on direct examination, Agent Medlin conceded his error in a somewhat oblique fashion, admitting that Vilfer was "essentially correct" that the Exchange Database is "an elastic container" and that "deleted e-mails are contained within that container"—***not*** expelled into free space where DriveScrubber can reach them—unless the administrator engages in a special "cleanup process."[8]

On cross-examination, any remaining pretense dropped away as Agent Medlin was forced to unequivocally recant his earlier testimony:

> Q.   [I]s it correct that a computer containing Microsoft Outlook, with an Enterprise Database on the computer, that if someone purchases a Drivescrubber program, and runs the Drivescrubber program on their computer, that Drivescrubber program will not erase e-mails inside the . . . Enterprise Database?

---

[6] Opp. at 14.

[7] Peters Decl., Ex. 11 (2/27/14 Tr.) at 2993:11-3004:11.

[8] *Id.* at 3076:18-3077:19.

4
REPLY ISO MTN FOR JUDGMENT OF ACQUITTAL ON COUNT THREE OF THE SUPERSEDING INDICTMENT PURSUANT TO FED. R. CRIM. P. 29
Case No. 2:11-CR-0511 (WBS)

816981.02

> A.   When the Drivescrubber program is used to wipe the free space, in the free space mode of the program, that is correct.[9]
>
> Q.   Is it correct that when one double-deletes an e-mail inside the Enterprise Database, it does not automatically go into free space?
>
> A.   That is correct.[10]
>
> * * *
>
> Q.   [I]s there any question in your mind, at all, that anyone who buys a scrubber program cannot expect that scrubber program to go inside the Enterprise Database and erase a single e-mail?
>
> A.   That is correct sir. ***That cannot happen***.[11]

Agent Medlin further admitted that, in this case, there was no evidence that the so-called "cleanup process" mentioned in his direct testimony had been employed inside CEMG's Microsoft Outlook enterprise database.[12]

It's easy to see why the government feels compelled to rehabilitate Medlin now, when the Court is scrutinizing the sufficiency of the obstruction evidence and the government's conduct. Without the DriveScrubber theory, the only remaining explanation for the absence of the 10 e-mails from the three computers is that those e-mails never resided on those computers to begin with. That explanation derives additional force from three facts: (1) Swanger's Dell, the only computer containing those e-mails, was not seized in the government's search of CEMG's office, but was delivered to the government by Swanger himself sometime after the alleged email

---

[9] Medlin was distinguishing DriveScrubber's mode for wiping free space from its mode for wiping the entire hard drive. *Id.* at 3000:2-3001:17. The government has never claimed, nor could it claim, that Katakis used DriveScrubber to wipe the entire hard drives of the three computers or Swanger's Dell.

[10] *Id.* at 3084:9-23.

[11] *Id.* at 3088:16-20 (emphasis added).

[12] Hirsch Decl., Ex B (2/27/14 Tr.) at 3084:24-3086:9; Peters Decl., Ex. 11 (2/27/14 Tr.) at 3088:7-15.

5

REPLY ISO MTN FOR JUDGMENT OF ACQUITTAL ON COUNT THREE OF THE SUPERSEDING INDICTMENT PURSUANT TO FED. R. CRIM. P. 29
Case No. 2:11-CR-0511 (WBS)

816981.02

deletions;[13] (2) some of the 10 e-mails lacked header information and/or bore addresses featuring an erroneous "global.com" domain name;[14] and (3) Katakis's expert testified that the only explanation for the absence of the 10 e-mails is that they were fabricated;[15] and he explained how that might have been accomplished.[16]

The government's continued reliance on Agent Medlin's "DriveScrubber" testimony after Medlin himself repudiated it is inexcusable. DriveScrubber was allegedly the means by which Katakis destroyed the 10 e-mails. But DriveScrubber can't destroy or even delete e-mails; and, in any event, the 10 e-mails weren't destroyed. They were found on Swanger's Dell computer. Section 1519—the statute of conviction here—does not cover "attempted" obstruction. Rather, it "requires proof that the defendant *actually* altered, destroyed, mutilated, concealed, covered up, falsified, or made false entry in a record, document, or object." *United States v. Stevens*, 771 F. Supp. 2d 556, 563 (D. Md. 2011) (emphasis added). The undisputed evidence is that Katakis couldn't have "actually" destroyed a single e-mail using DriveScrubber. Thus, the DriveScrubber theory failed as a matter of law.

**B.   The government's "just hit delete" theory is unsupported by sufficient evidence.**

The government fails to come to grips with the insufficiency of the evidence that it offered to prove its new obstruction theory. As discussed in our opening brief, after Agent Medlin retracted his DriveScrubber testimony, the government pivoted to a completely different theory that Katakis violated section 1519 by "just hitting delete"—that is, by moving the 10 e-mails and

---

[13] Hirsch Decl., Ex. C (2/20/14 Tr.) at 2402:6-18.

[14] Hirsch Decl., Ex. D (2/19/14 Tr.) at 2152:14-2156:1.

[15] *See* Peters Decl., Ex. 11 (2/27/14 Tr.) at 3056:22-3057:20 ("[I]t's a suspicious circumstance to me that they are only on Mr. Swanger's computer, and that the e-mails, in some instances, lack header information as to their origin. . . . The only explanation would be that they had been fabricated on his computer from other e-mails.").

[16] *See* Hirsch Decl., Ex. B (2/27/14 Tr.) at 3096:24-3099:22.

other unspecified e-mails from the inbox on Swanger's Dell to a folder reserved for "deleted" items.

One problem with that theory is that e-mails are routinely and quite properly deleted to unclutter the user's inbox and free up server space.  The vast majority of e-mail deletions are therefore innocent; and "when there is an innocent explanation for a defendant's conduct as well as one that suggests that the defendant was engaged in wrongdoing, the Government must produce evidence that would allow a rational jury to conclude beyond a reasonable doubt that the latter explanation is the correct one."  *United States v. Delgado*, 357 F.3d 1061, 1068 (9th Cir. 2004).

Evidence that, at some point in time, e-mails were managed by deleting or double-deleting them is insufficient, because that conduct is not criminal.  Section 1519 "imposes criminal liability only on those who were conscious of the wrongfulness of their actions."  *Stevens*, 771 F. Supp. 2d at 561.  "To hold otherwise would allow § 1519 to reach inherently innocent conduct, such as a lawyer's instruction to his client to withhold documents the lawyer in good faith believes are privileged."  *Id.*  To support an obstruction charge, therefore, the government had to prove that e-mails were destroyed in response to an awareness or concern about an investigation. *See United States v. Yielding*, 657 F.3d 688, 711 (8th Cir. 2011).

The government failed to meet that burden.  Its attempt to do so hinged entirely on an assertion that the deletion of e-mails on Swanger's Dell computer couldn't have been routine and innocent, because it occurred "within 48 hours" of Katakis's learning that the government had subpoenaed his bank records.  The entire theory therefore stood or fell depending on exactly ***when*** the 10 e-mails (and others) were moved to the deleted-items folder on Swanger's Dell.

Given the critical importance of this timing issue, it is telling that the government submitted no forensic evidence whatsoever as to when any of the deletions occurred.  This would

7
REPLY ISO MTN FOR JUDGMENT OF ACQUITTAL ON COUNT THREE OF THE SUPERSEDING
INDICTMENT PURSUANT TO FED. R. CRIM. P. 29
Case No. 2:11-CR-0511 (WBS)

816981.02

have been easy to obtain.[17] Yet the government—despite presenting expert evidence on such arcane matters as DriveScrubber, free space, overwriting data, and metadata—failed to have its expert examine or testify concerning the relatively simple question of when the 10 e-mails (or any others) were "deleted."

To prove its just-hit-delete theory, therefore, the government is left with nothing but Swanger's testimony that an unspecified number of e-mails were "deleted" from his Dell computer on September 4, 2010. But that testimony had more than enough holes in it, of sufficient size, to preclude any rational juror from finding guilt beyond a reasonable doubt:

- Swanger testified that Katakis used DriveScrubber to erase e-mails permanently—but Vilfer testified, and Agent Medlin confirmed, that DriveScrubber can't erase or even delete e-mails, as they do not enter free space where DriveScrubber can access them. The government's continued reliance on Swanger's testimony disregards the fact that it involved only the use of DriveScrubber—a theory that was repudiated.

- Swanger testified that he saw Katakis "push delete" and then leave his office as the Dell slowly began deleting something.[18] Swanger also testified that his Dell contained over 4,000 e-mails.[19] But how could Katakis *double*-delete nearly all of those 4,000 e-mails by pushing delete once and then leaving?

- Vilfer testified without contradiction that he found some 12,000 double-deleted e-

---

[17] *See* Hirsch Decl., Ex. E (http://blog.unmc.edu/learnit/2012/06/05/sort-by-date-deleted-in-outlook-trash-folder/) (last visited April 23, 2014) (explaining how to sort deleted e-mails by their deletion date in Outlook).

[18] *See* Peters Decl., Ex. 6 (2/19/14 Tr.) at 2145:9-2146:5.

[19] *See Id.* at 2145:9-15.

8
REPLY ISO MTN FOR JUDGMENT OF ACQUITTAL ON COUNT THREE OF THE SUPERSEDING INDICTMENT PURSUANT TO FED. R. CRIM. P. 29
Case No. 2:11-CR-0511 (WBS)

816981.02

mails on Swanger's Dell.[20] Katakis supposedly deleted around 4,000. How did the additional 8,000 e-mails that Vilfer found on the Dell get double-deleted, when there is no evidence that Katakis deleted them, and Swanger admitted to Katakis that he never deleted e-mails?[21]

- Swanger testified that Katakis checked and unchecked boxes to select the e-mails to be deleted;[22] but the government submitted no evidence that Outlook employs check-boxes for that purpose—and anyone who has used Outlook would confirm that it doesn't.

- Swanger testified that when he returned to the office the following Monday, "almost all the e-mails [on his Dell computer] were gone."[23] But neither he nor the government ever explained why, despite this massive and purportedly thorough purge, the infamous 10 e-mails were found only on Swanger's Dell and no other machine.

Thus, the evidence of the government's just-hit-delete theory is insufficient to sustain Katakis's conviction.

**C.   The government's last-minute switch in theories unfairly prejudiced Katakis.**

Not only was there insufficient evidence, but the government's new theory of obstruction—involving a different computer, a different criminal act, and a different (and never clearly specified) means of committing that act—resulted in a variance that severely prejudiced the defense.

Repeatedly throughout this case—in Agent Medlin's expert report, in the government's

---

[20] *See* Hirsch Decl., Ex. B (2/27/14 Tr.) at 3045:2-7.
[21] *See* Peters Decl., Ex. 6 (2/19/14 Tr.) at 2145:9-15.
[22] *Id.* at 2145:17-24.
[23] *Id.* at 2146:13-24.

trial brief, in the government's opening,[24] and again in Medlin's testimony—the government led the defense to believe that it was prosecuting Katakis for downloading DriveScrubber and using it to erase the 10 e-mails from the three computers.  Only when that theory collapsed did the government's attention turn to a different *locus* (Swanger's Dell, the only computer that contained the 10 e-mails) and a different *actus reus* (hitting the delete button on Swanger's Dell).

The government lamely asserts that the Superseding Indictment provided adequate notice of the just-hit-delete theory by quoting section 1519 and by including a totally nonspecific allegation that Katakis "deleted and caused others to delete electronic records and documents." Opp. at 12.  But the government's reliance on this uninformative boilerplate is foreclosed by the fact that the Indictment goes on to describe specific conduct—namely, that Katakis "installed and used and caused others to install and use a software program that overwrote deleted electronic records and documents so that they could not be viewed or recovered."  Peters Decl., Ex. 1, ¶ 5; *see United States v. Adamson*, 291 F.3d 606, 616 (9th Cir. 2002) (observing that, where an indictment goes on to specify the particular conduct constituting the crime, the government's proof cannot diverge from that description lest the indictment "affirmatively misle[a]d the defendant and obstruct[t] his defense at trial").  Thus, the proper inquiry is not whether the government's evidence tracked the statutory language, but whether it tracked the ***specific*** conduct alleged in the Superseding Indictment and in the government's other pre-trial disclosures.  It most certainly did not.

The government's last-minute creation of a new theory severely prejudiced the defense. The government induced Mr. Katakis to prepare a defense based upon the use of DriveScrubber to overwrite deleted emails, and the focus of that defense was on the three computers where

---

[24] While the government points to its opening statement that Katakis deleted emails "and" installed a scrubber program, Opp. at 13, the only evidence of obstruction discussed in opening was of the installation of DriveScrubber to permanently erase or destroy emails.  Peters Decl., Ex. 5 (2/5/2014) at 378:9-80:16.

10
REPLY ISO MTN FOR JUDGMENT OF ACQUITTAL ON COUNT THREE OF THE SUPERSEDING INDICTMENT PURSUANT TO FED. R. CRIM. P. 29
Case No. 2:11-CR-0511 (WBS)

816981.02

obstruction allegedly occurred.  As a result, Vilfer's report and testimony—just like Medlin's—did not analyze the e-mails on Swanger's Dell, let alone attempt to determine the dates on which they were moved to the deleted-items folder.[25]  Had Katakis known that the government would try to prove obstruction by alleged concealment of e-mails on Mr. Swanger's Dell, the timing and circumstances of that deletion would have become a focus of his defense.[26]  The government's misdirection, however, prevented Vilfer from developing that line of inquiry.

Given the centrality of the *actus reas* and *locus* of destruction or concealment to any obstruction charge, the facts here are analogous to those in which a fatal variance was found because the defendant was "induced [] to prepare a defense that would be insufficient to ward off the government's proof at trial."  *See Adamson*, 291 F.3d at 616 (finding fatal variance in fraud case where government misled defendant as to the actual misrepresentation that would be shown a trial);[27] *United States v. Tsinhnahijinnie*, 112 F.3d 988, 990-91 (1997) (finding fatal variance where defendant was indicted for sexual abuse on an Indian reservation over a two-month period, but trial testimony established abuse over a different period of time both on and off the

---

[25] Hirsch Decl., Ex.F (Vilfer Expert Report).

[26] The government misleadingly argues that Katakis was on notice that Swanger's Dell "would be part of the case." Opp. at 12.  But ***what*** part of the case?  It was one thing for Swanger's Dell to be in the case as the only place where the 10 e-mails were found, leading to a (false) inference that those e-mails had been erased from the other three computers.  It is quite another thing for Swanger's Dell to be in the case as the *locus* of the crime itself.  *See* Peters Decl., Ex 2 (Gov't Ex. 2634, email examination "summary" showing Swanger's Dell as containing the 10-emails, but the three other computers as not containing the 10-emails).

[27] The government's feeble attempt to distinguish *Adamson* is unavailing since the nature of an alleged misrepresentation is equally central to a fraud charge as is the alleged destruction or concealment to an obstruction charge.  For similar reasons, the facts here are nothing like the cases cited by the government, which involved immaterial variances or no variance at all.  *See* Opp. at  13 (citing *United States v. Von Stoll*, 726 F.2d 584, 586 (9th Cir. 1984) (finding immaterial variance because identity of defrauded person is wholly irrelevant to conviction for transportation of stolen goods under 18 U.S.C. § 2314); *United States v. Hazeem*, 679 F.2d 770 (9th Cir. 1982) (finding no variance between indictment referencing entire sum of money embezzled from bank, and evidence at trial of defendant's retained portion, where retained portion was described in indictment as an overt act); *United States v. Olsen*, 925 F.2d 1170, 1174-75 (9th Cir. 1991) (holding that mail fraud instruction referencing a scheme "to obtain money *or property*" was not improper where indictment charged a scheme only "to obtain money", but government offered no evidence that defendant obtained anything but money)).

11
REPLY ISO MTN FOR JUDGMENT OF ACQUITTAL ON COUNT THREE OF THE SUPERSEDING INDICTMENT PURSUANT TO FED. R. CRIM. P. 29
Case No. 2:11-CR-0511 (WBS)

816981.02

reservation); *Jeffers v. United States.*, 392 F.2d 749, 752-53 (9th Cir. 1968) (finding fatal variance where indictment alleged that money solicited by religious group was used for non-religious purposes, but evidence at trial instead showed that use was merely contrary to representations). The government's just-hit-delete theory affected Katakis's substantial rights and cannot support the obstruction conviction.

### D. Like its opposition to this motion, the government's closing argument relied on false evidence.

The government responds to Katakis's charge of prosecutorial misconduct by placing yet more weight on Medlin's discredited DriveScrubber theory. Opp. at 14 (characterizing Medlin's testimony as "well-reasoned and well-supported"). But as Medlin himself conceded, DriveScrubber "cannot" be used to erase e-mails inside the Outlook database.[28] Thus, the government impermissibly relied on a false inference when it told the jury in closing that Katakis must have run DriveScrubber to delete e-mails because "[w]ell, if he didn't run it, if he didn't run it, there should be some remnant of the e-mails somewhere on Andrew Katakis's computer."[29] The government's undying reliance on the DriveScrubber theory—in its summation and once again here—represents conduct so flagrant as to warrant dismissal. *See United States. v. Lewis,* 368 F.3d 1102, 1107 n.5 (9th Cir. 2004) (government conduct may justify dismissal where it was flagrant in its disregard for the limits of professional conduct).

### III. CONCLUSION

For all of the foregoing reasons, the Court should grant Mr. Katakis's Motion for Judgment of Acquittal on Count Three.

Respectfully submitted,

---

[28] Peters Decl., Ex. 11 (2/27/14 Tr.) at 3088:16-20.
[29] Supplemental Declaration of Elliot R. Peters In Support Of Motion for Judgment of Acquittal (Dkt. No. 311), Ex. 14 (3/5/14 Tr.) at 3505:18-23.

| | | |
|---|---|---|
| Dated: April 24, 2014 | | HIGGS FLETCHER & MACK LLP |
| | By: | */s/ Paul Pfingst* |
| | | *(as authorized on April 24, 2014)* |
| | | PAUL PFINGST |
| Dated: April 24, 2014 | | KEKER & VAN NEST LLP |
| | By: | */s/ Elliot R. Peters* |
| | | ELLIOT R. PETERS |
| | | STEVEN A. HIRSCH |
| | | JENNIFER A. HUBER |
| | | Attorneys for Defendant |
| | | ANDREW B. KATAKIS |

13

REPLY ISO MTN FOR JUDGMENT OF ACQUITTAL ON COUNT THREE OF THE SUPERSEDING INDICTMENT PURSUANT TO FED. R. CRIM. P. 29
Case No. 2:11-CR-0511 (WBS)

816981.02