KEKER, VAN NEST & PETERS LLP
ELLIOT R. PETERS - #158708
epeters@keker.com
JENNIFER A. HUBER - #250143
jhuber@keker.com
ELIZABETH K. MCCLOSKEY - #268184
emccloskey@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

Attorneys for Defendant
ANDREW B. KATAKIS

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW B. KATAKIS, DONALD M. PARKER, ANTHONY B. JOACHIM, and W. THEODORE LONGLEY,<br><br>Defendants. | Case No. 2:11-CR-0511 (WBS)<br><br>**SENTENCING MEMORANDUM OF ANDREW KATAKIS**<br><br>Date:          November 6, 2017<br>Time:          9:00 a.m.<br>Ctrm:          5, 14th Floor<br>Judge:         Hon. William B. Shubb<br><br>Date Case Filed:          December 7, 2011 |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .................................................................................................1

II.     BACKGROUND FACTS .......................................................................................3

     A.      Mr. Katakis's Childhood and Family Background. ...................................3

     B.      Mr. Katakis's Work Ethic and Compassion for His Employees. ...........5

     C.      Mr. Katakis's Generosity and Good Deeds. .........................................9

     D.      Mr. Katakis as Husband and Father.......................................................10

III.    THE COURT SHOULD SENTENCE MR. KATAKIS TO A SENTENCE OF NO MORE THAN FIVE MONTHS' INCARCERATION, RESTITUTION, A FINE, SUPERVISORY RELEASE AND COMMUNITY SERVICE. .......................................11

     A.      Legal Standard. .................................................................................11

     B.      Properly Computed, Mr. Katakis's Offense Level is 19.......................12

     C.      The Sentencing Factors Warrant a Sentence Well Below the Advisory Guidelines. ......................................................................................13

          1.      Mr. Katakis's History and Characteristics Support a Sentence of No More Than Five Months. ...................................................13

          2.      The Nature and Circumstances of the Offense also Counsel in Favor of a Sentence of No More Than Five Months. ..............14

          3.      The Need to Avoid Sentencing Disparities Counsels in Favor of No More Than a Five-Month Sentence. .........................................15

     D.      No More Than a Five-Month Sentence Constitutes an Appropriate and Just Punishment in this Case. ..........................................................16

IV.     CONCLUSION.....................................................................................................17

1200359

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

<u>Federal Cases</u>

4

*Gall v. United States*
   552 U.S. 38 (2007)....................................................................................... 11

5

*United States v. Adelson*
6    441 F. Supp. 2d 506 (S.D.N.Y. 2006).............................................................. 13, 17

7

*United States v. Ameline*
   409 F.3d 1073 (9th Cir. 2005) ...................................................................... 14

8

*United States v. Autery*
9    555 F.3d 864 (9th Cir. 2009) ................................................................. 11, 12, 14

10

*United States v. Booker*
   543 U.S. 220 (2005)..................................................................................... 11

11

*United States v. Carty*
12    520 F.3d 984 (9th Cir. 2008) ...................................................................... 11, 12

13

*United States v. Edwards*
   595 F.3d 1004 (9th Cir. 2010) ...................................................................... 17

14

*United States v. Hoac*
15    990 F.2d 1099 (9th Cir. 1993) ...................................................................... 12

16

<u>Federal Statutes</u>

17

18 U.S.C. § 3553.......................................................................................... *passim*

18

19

20

21

22

23

24

25

26

27

28

SENTENCING MEMORANDUM OF ANDREW KATAKIS
Case No. 2:11-CR-0511 (WBS)

1200359

# I.   INTRODUCTION

A criminal sentencing requires a Court to take the measure of a person's life.  The more than 80 letters submitted to the Court on behalf of Andrew Katakis present a compelling and consistent portrait of a good man, a pillar of his community, a foundational rock within his family, and a strong but compassionate business leader, respected and loved by his employees.  As observed by persons from every angle of his life—family member, employee, business associate, church leader, neighbor—the same Andrew Katakis emerges.  Mr. Katakis is humble, having risen from the modest trappings of a household whose breadwinner ran a junk yard.  Following in his father's footsteps, Mr. Katakis is extremely hard working.  Many describe him as the hardest working person they have ever known.  He is ethical and decent.  He is generous to employees, family members, his church and even to complete strangers, while seeking nothing, not even recognition, in return.  He helps people out, appearing with ladder and hammer at the home of a neighbor or a former employee down on his luck.  To the extent a man's measure can be taken from the words others speak about him, Mr. Katakis has lived a life to be praised, envied and celebrated.  But it is not a celebration that brings us to Court.

Mr. Katakis stands before this Court for sentencing having been convicted at trial of one count of conspiracy to violate the antitrust laws by rigging bids in connection with foreclosure auctions in San Joaquin County in 2009 and 2010.  The Court is familiar with the underlying facts, having presided over the trial, post-conviction proceedings, and having sentenced nine other defendants for the same crime.  In doing so, the Court has already expressed its views regarding several salient aspects of this sentencing.  The Court has observed that most of the conspirators did not realize that they were breaking the law.[1]  The Court has identified Wiley Chandler and

---

[1] Dkt. No. 560 (9/12/2016 Sentencing Transcript) at 77:22-24 ("This particular crime is somewhat unique in that it really does appear that most of the defendants didn't realize that what they were doing was a crime.").

1200359

Richard Northcutt as the ringleaders of the conspiracy and expressed the view that without their involvement and leadership, the conspiracy likely never would have existed.[2]

The Court now faces the determination of a just sentence for Mr. Katakis, a punishment that is "sufficient, but not greater than necessary" to effectuate the goals of criminal punishment. 18 U.S.C. § 3553(a).  Mr. Katakis was not a ringleader, and deserves a lesser sentence than the seven months in prison that Mr. Chandler and Mr. Northcutt received.  Mr. Katakis has liquidated his assets and is prepared to pay the Guidelines fine of $444,022.73 and the restitution of $505,014.59, as set forth in the Presentence Report ("PSR").  He has no objection to performing community service at Habitat for Humanity, or another similar organization, and would willingly make a donation to such an organization, as a condition of any probation or supervised release.

While less culpable than other defendants who orchestrated the secondary auctions, Mr. Katakis also occupies a unique position in this conspiracy in several other respects.  Mr. Chandler, Mr. Northcutt and Ken Swanger swindled from Mr. Katakis.  They inflated prices, rigged the secondary bidding and on occasion lied to Mr. Katakis to cause him to overpay for properties he bought.  The conspiracy was designed to enrich bidders who didn't actually buy properties at the secondary auction, but Mr. Katakis was mostly frequently the buyer, through Ken Swanger.  But we recognize that Mr. Katakis occupies a unique position in another respect too, in that he is one of two defendants facing sentencing who went to trial, and who did not plead guilty and agree to cooperate.

To the government, this distinction is all that matters.  They would like to throw the book at Mr. Katakis, and ask the Court, through Probation, for a sentence in excess of four years in prison.  In the view of the government, Katakis deserves a sentence more than *seven times* longer than persons more culpable than he is solely because he asserted his constitutional right to a trial.

---

[2] *See, e.g.*, *id.* at 138:3-9.

1200359

We hope and trust that the Court takes a less narrow view of what constitutes fairness and what amounts to justice. Indeed, even the government's apparent view of the facts cannot possibly justify the sentencing distinctions it asks this Court to draw. The government has never disputed that Mr. Chandler and Mr. Northcutt were the ringleaders. They do not dispute that the ringleaders systematically stole from Mr. Katakis or that Ken Swanger helped them do so. And they do not present any reason, compelling or otherwise, why society needs Mr. Katakis incarcerated at all, let alone for the lengthy period they seek.

With respect to the advisory Guideline range, Mr. Katakis filed objections to the PSR, outlining his objections to adjustments for Role in the Offense pursuant to Guidelines Section 3B1.1 and the inaccurate factual underpinnings for that.[3] Mr. Katakis is not a leader or organizer, and the advisory Guideline should be placed at a level 19.

Further, in imposing a sentence the Court must then apply the factors set forth in 18 U.S.C. § 3553 in order to arrive at the "sufficient, but not greater than necessary" sentence to effectuate the goals of sentencing. That analysis in this case leads to a fine and restitution in the amounts set forth above and a custodial sentence, if any, substantially less than the seven months Mr. Chandler and Mr. Northcutt received. But before turning to that analysis, we first take a few moments to flesh out the life and character of the man this Court will be sentencing.

## II.   BACKGROUND FACTS

### A.   Mr. Katakis's Childhood and Family Background.

Andrew Katakis is the youngest of three brothers, raised in Turlock, California. Mr. Katakis's parents were the children of Greek immigrants. Mr. Katakis's father, William Katakis, dropped out of high school to support his family. He ran an auto-wrecking yard for his entire adult life. Mr. Katakis's mother, Hope, graduated from high school and college and worked as a

---

[3] Dkt. No. 661 (Mr. Katakis's Objection to PSR).

phlebotomist until Mr. Katakis's eldest brother, William, was born.[4]   Once her three sons were

grown, Hope returned to work to support the family.  Mr. Katakis's father worked tirelessly to

support his family; he taught his brood how to work with their hands, but pushed them to excel in

school so they could rise above their father's station.[5]   During their childhood, Mr. Katakis and

his brothers were put to work in the junk yard, rebuilding wrecked cars with foraged parts from

the yard.[6]   In an early demonstration of his entrepreneurial spirit, Mr. Katakis and his brothers

fixed up a wrecked box car full of motor scooters and sold them.[7]   When he was old enough to

drive, Mr. Katakis wasn't given a car.  Instead, he built one from wreckage and parts he

scavenged from his father's junk yard.[8]   A childhood friend (now a Stanislaus County Probation

Officer) writes that Mr. Katakis was one of his first friends to "get a paper route, [and] opened his

own corner fruit stand while in his teens…."[9]

　　　　　Mr. Katakis's brother Ron Katakis writes to the Court that his parents "were frugal people

who worked hard throughout life and never borrowed or owed any money, ever."[10]   Mr. Katakis's

parents placed a strong emphasis on hard work, ethics and morals—an ethos that Mr. Katakis and

his brothers strive to live by to this day.[11]

　　　　　Mr. Katakis attended college at California State University at Stanislaus, graduating in

1986.  College friends describe Mr. Katakis as "good, honest[] hardworking" and "dedicated and

---

[4] Ex. 41 (Ron Katakis).

[5] *Id.*

[6] Ex. 42 (William Katakis).

[7] Ex. 35 (John Grillos).

[8] Ex. 43 (Melissa Katakis).

[9] Ex. 70 (Sleeper).

[10] Ex. 41 (Ron Katakis).

[11] *Id.*

1200359

ethical in everything he does in life."[12]  During college and the years that followed, Mr. Katakis worked multiple jobs, including at his father's auto wrecking yard.[13]

### B.     Mr. Katakis's Work Ethic and Compassion for His Employees.

Mr. Katakis's family, friends, colleagues and employees universally describe him as one of the hardest working and most principled people they have ever known.[14]  To many, he possesses "one of the strongest and most intense work ethics of anyone I have ever known."[15] "Andrew is one of the hardest working people I have ever met ...."[16]  Mr. Katakis "is one of the most hardworking and honest persons I know."[17]  He is a "model of work ethic", "start[ing] from nothing in a dirty auto wrecking yard," and "slowly but surely . . .  start[ing] his own successful businesses."[18]  Even after achieving success, Mr. Katakis "was always the first person in the office and the last to leave."[19]

Mr. Katakis's businesses, Capital Equity Management Group and others, which are based in Modesto, California, are successful and thriving companies in a community that needs the stimulus.  They provide employment opportunities to a region that was hardest hit by the foreclosure crises and continues to suffer from a high unemployment rate.  Mr. Katakis has brought many jobs to this depressed region—whether it be real estate agents, painters, contractors or landscapers.  As one community member attests, "I and many others have admired, benefitted from and appreciated Andrew for his passion in building better communities by restoring blighted

---

[12] Ex. 5 (Jose Arroyo).

[13] *Id.*

[14] Ex. 63 (Presto).

[15] Ex. 81 (Michael Zagaris); Ex. 63 (Presto).

[16] Ex. 35 (John Grillos).

[17] Ex. 70 (Sleeper).

[18] Ex. 54 (McGrath).

[19] *Id.*

1200359

homes and buildings which had become eye sores and unsafe for the community."[20] John Dunn, a friend and longtime lawyer to Mr. Katakis writes that one might conclude that flipping homes is an opportunistic or ignoble pursuit. But for his entire life, Mr. Katakis "has been raised to take what others throw away or dispose of and make something out of them, to rehabilitate those things, and to make the community better in the way he knows how."[21]

As a business owner, Mr. Katakis's dedication and generosity to his employees is remarkable. One former employee writes that Mr. Katakis was "the best person I have ever worked for, and one of the best humans I have had the pleasure to know.[22] "[T]he oft-used expression 'he would give you the shirt off of his back' is never truer than it is with Andrew."[23] Kim Lusk, a long-time employee of California Equity Management Group, writes of the "best possible" working environment Mr. Katakis provides for his employees.[24] There are many stories of Mr. Katakis giving or lending money to his employees, or stepping in to assist employees who stood to lose their homes to foreclosure by helping them re-finance, find rentals, or re-enter the housing market when the time was right. Mr. Katakis never asked for anything in return.[25] When Linda Hunnel, a 12-year employee of Mr. Katakis's asset recovery company, lost her own home during the foreclosure crises, Mr. Katakis reached out and offered her assistance.[26] Tammie Miller, a real estate agent who has been listing homes for Mr. Katakis during the last five years credits Mr. Katakis with helping her secure a home for her family.[27] She has seen him do

---

[20] Ex. 18 (Day).

[21] Ex. 20 (Dunn).

[22] Ex. 54 (McGrath).

[23] *Id.*

[24] Ex. 49 (Lusk).

[25] *Id.*; Ex. 42 (William Katakis).

[26] Ex. 38 (Hunnel).

[27] Ex. 56 (Miller).

1200359

this for others, and is "honored" to work with Mr. Katakis.[28]  Bryant McGrath, tells the story of a former employee of Mr. Katakis who had fallen on hard times and was facing eviction.  Mr. Katakis immediately went to his safe and handed the former employee enough money to get back on his feet.[29]  Mr. McGrath writes, "people matter to Andrew, not money."[30]

Long time employees of Mr. Katakis write of his generosity and everyday good deeds.  Melinda Haggstrom, a 12-year employee of California Equity Management Group, tells a story of discovering a worn down wooden play set at a house they had purchased at a foreclosure sale.[31]  When Ms. Haggstrom asked Mr. Katakis if she could have the play structure for her toddler, Mr. Katakis not only freely gave it to her, but proceeded to spend an entire weekend repairing and painting the structure.[32]  Amy Elmer, a 12-year employee of Mr. Katakis, describes him as someone who is "selfless," "as genuine as anyone can be" and strives to ensure that his employees are taken care of.[33]  As Ms. Elmer writes, "I cannot express enough how out of character this case is for Andrew.  I will always stand by him and believe in him as he will always stand by us, his employees, the people of this community, and his family."[34]  Cindy Shepard, a pastor in the Central Valley, worked for Mr. Katakis's company for a time to earn some extra income.  When Ms. Shepard's father became ill, Mr. Katakis readily granted her a flexible schedule and special accommodations to care for her father.[35]  As Ms. Shepard's daughter writes, Mr. Katakis's accommodation of her mother's needs, allowed her mother to care for an ailing

---

[28] *Id.*

[29] Ex. 54 (McGrath).

[30] *Id.*

[31] Ex. 37 (Haggstrom).

[32] *Id.*

[33] Ex. 23 (Elmer).

[34] *Id.*

[35] Ex. 69 (Shepard).

1200359

family member without sacrificing her job or a paycheck.[36]   A lawyer who performs work for Mr. Katakis's company writes of Mr. Katakis's willingness to take a chance on him and hire a relatively inexperienced lawyer returning from service in Afghanistan.[37]   Mr. Katakis's business was a lifeline for which he will always be grateful.[38]

Mr. Katakis's ethics extend beyond the treatment of his employees.  In the foreclosure business, he "bend[s] over backwards" to give tenants or former homeowners more time than is required so they can find another place to stay.  "Th[e] time extension is not something he has to do, just something he thinks is the right thing to do."[39]

Mr. Katakis's operates a business that specializes in re-uniting assets with missing owners or heirs.  It is the "gold standard" in the funds recovery business.[40]   On numerous occasions, Mr. Katakis has gone out of his way to seek justice.[41]   A colleague writes of Mr. Katakis learning about a man, Fred Crawford, who became homeless when he could not keep up with his taxes or bills.[42]   While Mr. Crawford was entitled to a surplus of money from the sale of his home, no one could find him.  Mr. Katakis rescued Mr. Crawford from living on the streets during freezing winter temperatures, advanced money out of his own pocket to secure Mr. Crawford a permanent place to live, and even helped arrange for Mr. Crawford to receive his social security and navy

---

[36] Ex. 52 (Mantel).

[37] Ex. 24 (Farrar).

[38] *Id.*

[39] Ex. 73 (Tims).

[40] Ex. 24 (Farrar).

[41] Ex. 12 (Carroll)

[42] Ex. 75 (Vanacore).

1200359

benefits.[43]  Mr. Crawford now lives comfortably in an apartment and receives his earned benefits from the government.  "All of this was made possible by Mr. Katakis."[44]

### C.     Mr. Katakis's Generosity and Good Deeds.

Mr. Katakis's wife, Melissa Katakis, writes that anyone can see his work ethic and drive to succeed, but his giving nature is "quietly tucked away."[45]  Mr. Katakis is a proud and stoic man, but those who know him well see a soft and loving side.[46]  As the 82 letters submitted on Mr. Katakis's behalf attest to, he routinely helps others without asking for anything in return.

Like his employees and colleagues, friends, family, and neighbors tell stories of Mr. Katakis readily jumping to the aid of others.  Upon hearing that the family of a deceased friend could not afford to have a funeral or service, Mr. Katakis funded a Celebration of Life gathering attended by 100 family and friends.[47]  Another long-time friend writes that Mr. Katakis was the first person by his side when he came out as a gay man, talking him down from taking his own life and standing by him when his family did not.[48]

Mr. Katakis gives generously of his time; he seems always to stand ready to come to the aid of others with his toolbox.[49]  Mr. Katakis's neighbors in Danville tell a story of their 16-year old daughter who got her car stuck in a ditch backing out of their driveway when they were away. Mr. Katakis helped her get the car out.[50]  On another occasion, the lock on the same neighbors' door was broken, preventing the door from closing.  Mr. Katakis came over with his tools to fix

---

[43] *Id.*

[44] *Id.*

[45] Ex. 43 (Melissa Katakis).

[46] Ex. 48 (Luli-Kinsey).

[47] Ex. 43 (Melissa Katakis)

[48] Ex. 48 (Luli-Kinsey).

[49] Ex. 50 (Lyons).

[50] Ex. 46 (Loura)

9

1200359

it.[51]   Another friend tells a story of Mr. Katakis's discovery that a mutual friend had been living without a furnace for one-and-a-half years.  Mr. Katakis gave him a furnace, and on another occasion, purchased and installed plumbing parts to fix a leak at the friend's home.  Mr. Katakis would later take over negotiations with a financial institution to save his friend's home from foreclosure.[52]

Even Mr. Katakis's tenants share stories of his goodwill.  Gloria Mraz, a Certified Public Accountant who rents office space from Mr. Katakis, writes to the Court of Mr. Katakis renting her additional space and re-configuring the office at no charge to ensure that a quadriplegic employee had an accessible office.  Like others, Ms. Mraz tells stories of Mr. Katakis grabbing his ladder and tools to help her hang pictures when he saw her struggling.[53]

Mr. Katakis quietly supports charitable causes.  The Reverend Father Jon Margoulias of the Greek Orthodox Church in Modesto, California, writes that he has known Mr. Katakis for three decades.  During this time, Mr. Katakis has generously contributed to the Church, but he always insists on anonymity.[54]  Mr. Katakis has worked, along with his wife, to raise money for underprivileged children.[55]  Mr. Katakis and his wife are also advocates for rescue cats.  They spend countless hours finding homes and donating their time and resources to save cats in need.[56]

### D.   Mr. Katakis as Husband and Father.

Mr. Katakis began dating his wife, Melissa Katakis, in August 2001, and they married in 2005.[57]  They live in Danville, Califonia with their two children, Miranda, age six, and Carson,

---

[51] *Id.*
[52] Ex. 4 (Todd Anderson).
[53] Ex. 57 (Mraz).
[54] Ex. 51 (Magoulias).
[55] Ex. 43 (Melissa Katakis).
[56] Ex. 23 (Elmer).
[57] Ex. 43 (Melissa Katakis).

1200359

age two.  Melissa Katakis writes to the Court that, Mr. Katakis is the "supporter," "protector," and "backbone" of his family.[58]  Many letters to the Court remark upon Mr. Katakis's joy and excitement in becoming a father.[59]  He shares photos of his children and stories of their first steps or new words with immense pride.[60]

It is not just his own children who adore him.  Mr. Katakis is his nephew's favorite grown-up.  In the words of Mr. Katakis's brother William Katakis, Mr. Katakis and his son, "have this bond that simply cannot be described."[61]

Given his family background, Mr. Katakis takes great pride in his self-made success and moral compass.  The stain of conviction and these proceedings have already taken their toll.  Mr. Katakis is deeply ashamed, and fears that his children will be shunned given his conviction.[62]

## III.   THE COURT SHOULD SENTENCE MR. KATAKIS TO A SENTENCE OF NO MORE THAN FIVE MONTHS' INCARCERATION, RESTITUTION, A FINE, SUPERVISORY RELEASE AND COMMUNITY SERVICE.

### A.   Legal Standard.

The Court has wide discretion in setting Mr. Katakis's sentence.  Because the Guidelines are advisory, *see United States v. Booker*, 543 U.S. 220, 244-46 (2005), the Court must make an individualized assessment of the appropriate sentence, based on the particular facts of the case, by considering the factors set forth in 18 U.S.C. § 3553(a).  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (en banc).  The Guidelines are to be "respectfully considered" as a "starting point and the initial benchmark."  *United States v. Autery*, 555 F.3d 864, 872 (9th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007) (internal quotation mark omitted)).  The

---

[58] *Id.*

[59] Ex. 63 (Presto), Ex. 18 (Day).

[60] *Id.*

[61] Ex. 42 (William Katakis).

[62] *Id.*

1200359

Guidelines are but "one factor among the § 3553(a) factors that are to be taken into account," and may not "be given more or less weight than any other."  *Carty*, 520 F.3d at 991; *accord Autery*, 555 F.3d at 872.  The overarching principle is that the Court "shall impose a sentence sufficient, but not greater than necessary" to meet the goals of sentencing.  18 U.S.C. § 3553(a).

Among the important factors that the Court must consider in determining an appropriate sentence under Section 3553(a) are: (1) the history and characteristics of Mr. Katakis, including his criminal record (or lack thereof); (2) the nature and circumstances of the offense; (3) the need for just punishment; (4) the need for general and specific deterrence; and (5) the need to protect the public.  *Id.*; *Carty*, 520 F.3d at 991.  Each of these factors supports a downward variance in this case.

**B.      Properly Computed, Mr. Katakis's Offense Level is 19.**

Taking into account the objections set forth in Mr. Katakis's Objections to the Presentence Report (Dkt. No. 661),[63] his offense level under the Sentencing Guidelines should be calculated as follows:

| | |
|---|---|
| Base Offense Level [§ 2R1.1(a)]: | 12 |
| Agreement to Submit Non-Competitive Bids [§ 2R1.1(b)(1)]: | +1 |
| Volume of Commerce [§ 2R1.1(b)(2)(B)]: | +4 |
| Obstruction of Justice [§ 3C1.1]: | +2 |
| Total Adjusted Offense Level | 19 |

At offense level 19 in Criminal History Category I, Mr. Katakis's advisory sentencing range is 30 to 37 months.

---

[63] Specifically, Mr. Katakis does not qualify for a four-level enhancement for being an organizer or leader under § 3B1.1 of the U.S. Sentencing Guidelines Manual. As more fully set forth in Mr. Katakis's Objections to the Presentence Report, the government has failed to cite any evidence showing that Mr. Katakis was "an organizer, leader, manager, or supervisor" in this conspiracy. *United States v. Hoac*, 990 F.2d 1099, 1111 (9th Cir. 1993), *cert. denied*, 114 S. Ct. 1075 (1994).

1200359

C.     **The Sentencing Factors Warrant a Sentence Well Below the Advisory Guidelines.**

1.     **Mr. Katakis's History and Characteristics Support a Sentence of No More Than Five Months.**

In directing courts to consider the personal history and characteristics of a defendant as a necessary sentencing factor,[64] Congress plainly intended the "elementary principle of weighing the good with the bad, which is basic to all the great religions, moral philosophies, and systems of justice." *United States v. Adelson*, 441 F. Supp. 2d 506, 514 (S.D.N.Y. 2006).  The scores of letters to the Court submitted by Mr. Katakis's family, friends, colleagues, peers and neighbors reveal a nearly universal theme:  Mr. Katakis is a hardworking, honest and responsible man.  Mr. Katakis gives generously—to employees who fall on hard times, to tenants who require special accommodation and to neighbors and friends who need support, time and assistance.  The way in which Mr. Katakis has conducted his life demonstrates that his involvement in the antitrust conspiracy at issue here was an aberration, and is not an indication of his true character.  Mr. Katakis's strong family and community support, his unflagging work ethic and the admirable trajectory of his life all argue in favor of a downward variance.

Mr. Katakis's character and good deeds "were not performed to gain status or enhance his image.  Most of them were unknown to all but a few people until the time of his sentencing." *See Adelson,* 441 F. Supp. 2d at 513.  Indeed, as Mr. Katakis's wife Melissa writes, his giving nature is "quietly tucked away."[65]  As one court concluded, "surely, if ever a man is to receive credit for the good he has done, and his immediate conduct assessed in the context of his overall life hitherto, it should be at the moment of his sentencing, when his very future hangs in the balance." *Id.* at 513-14.

---

[64] The Probation Department refused to give any weight to Mr. Katakis's personal history and characteristics.  PSR ¶¶ 126-131.

[65] Ex. 43 (Melissa Katakis).

13

1200359

Mr. Katakis's deep devotion to his family also bears on the Court's determination of a sentence. *See, e.g., United States v. Ameline*, 409 F.3d 1073, 1112 n.2 (9th Cir. 2005).  Mr. Katakis is the "supporter," "protector," and "backbone" of his family.[66]  He is devoted not only to his wife and two young children, but also to his 80-year-old mother, two brothers and their families.

Finally, Mr. Katakis's lack of any prior criminal history highlights the fact that this crime—any crime—is completely out of character for Mr. Katakis.  The letters before this Court universally attest to that.  Mr. Katakis has never been arrested for any crime, let alone convicted for one.  He has been consistently and honesty employed for his entire life.  Due to his lack of criminal history, Mr. Katakis is classified with a Criminal History Category of I.  But when a defendant has no criminal record whatsoever, even this low Criminal History Category can lead to an overly high guideline range since defendants with minor criminal histories can receive identical categorizations.  Accordingly, the Ninth Circuit has held that where, as here, a defendant has a "complete lack of criminal history," the court may consider that history "as a mitigating factor" in support of a downward variance.  *Autery*, 555 F.3d at 874.  Such a downward variance is appropriate here.

### 2.   The Nature and Circumstances of the Offense also Counsel in Favor of a Sentence of No More Than Five Months.

Under § 3553(a), a sentencing judge must also consider "the seriousness of the offense," as well as the "nature and circumstances" surrounding that offense.  18 U.S.C. § 3553(a)(1)-(2)(A).  Here, as even this Court remarked during the sentencing of the other defendants in this case, "[t]his particular crime is somewhat unique in that it really does appear that most of the defendants didn't realize what they were doing was a crime."[67]  Mr. Katakis has consistently

---

[66] *Id.*

[67] Dkt. No. 560 (9/12/2016 Sentencing Transcript) at 77:22-24.

maintained that he never intended to engage in conduct he believed was illegal.  Indeed, there is nothing inherently illegal about a buyer of a property at a public auction later re-selling that property.[68]   Further, as this Court has also observed, Mr. Chandler and Mr. Northcutt were the ringleaders of this antitrust conspiracy.[69]   Without their involvement and leadership, the conspiracy here at issue likely never would have existed.

### 3.   The Need to Avoid Sentencing Disparities Counsels in Favor of No More Than a Five-Month Sentence.

Section 3553(a)(6) directs sentencing courts to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  Mr. Katakis is not the first defendant to be sentenced in this case for bid-rigging.  Despite the similarity of the offense conduct, none of the other defendants has been sentenced to a term of incarceration rivaling the 51 months recommended for Mr. Katakis by the Probation Department. Indeed, the sentences received by the 10 previous defendants ranged from straight probation to a maximum of 8 months in prison:

| NAME | CHARGE | SENTENCE |
|---|---|---|
| **Chandler, Wiley C.** Case No. 2:11-cr-00511 | Bid-Rigging; Conspiracy to Commit Mail Fraud | 7 months |
| **Ghio, Anthony** Case No. 2:10-cr-00144 | Bid Rigging | 5 months |
| **Hutz, Theodore B.** Case No. 2:10-cr-00238 | Bid Rigging | 5 months |
| **Jackson, Gregory L.** Case No. 2:11-cr-00090 | Bid-Rigging; Conspiracy to Commit Mail Fraud | Probation |

---

[68] Dkt. No. 268 (Jury Instructions Given) at Instruction No. 16 ("A winning bidder does not violate the Sherman Antitrust Act simply by selling his right to purchase a property won at a foreclosure auction. After a foreclosure auction sale, the winning bidder may pay the amount of the winning bid and take title to the property, or the winning bidder may sell his right to purchase the property to another individual or entity. That individual or entity may then take title in the individual or entity's own name.").

[69] *See* Dkt. No. 560 (9/12/2016 Sentencing Transcript) at 138:3-9 (remarking during sentencing that Chandler and Northcutt were the "moving forces" of the scheme and that it would not have happened without them).

1200359

| | | |
|---|---|---|
| **Joachim, Anthony B**. Case No. 2:11-cr-00511 | Bid-Rigging; Conspiracy to Commit Mail Fraud | 1 day |
| **Northcutt, Richard** Case No. 2:11-cr-00038 | Bid-Rigging; Conspiracy to Commit Mail Fraud | 7 months |
| **Olmstead, Walter Daniel** Case No. 2:11-cr-00291 | Bid-Rigging; Conspiracy to Commit Mail Fraud | 8 months |
| **Rose, Robert** Case No. 2:11-cr-00292 | Bid-Rigging; Conspiracy to Commit Mail Fraud | Probation |
| **Swanger, Kenneth** Case No. 2:11-cr-00492 | Bid-Rigging; Conspiracy to Commit Mail Fraud | 5 months |
| **Vanzetti, John R.** Case No. 2:10-cr-00239 | Bid Rigging | 5 months |

Imposing a sentence on Mr. Katakis more than seven times harsher than the highest sentence received by any other defendant cannot be reconciled with the directive of § 3553(a) to avoid unwarranted disparities.  That is particularly true here, where Mr. Katakis was, at most, a participant in the conspiracy.

### D.    No More Than a Five-Month Sentence Constitutes an Appropriate and Just Punishment in this Case.

Section 3553(a)(2) requires the Court to consider the "need for the sentence imposed," meaning, "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; [and] (C) to protect the public from further crimes of the defendant . . . ."  18 U.S.C. § 3553(a)(2). Here, the imposition of no more than five months' incarceration and two years' supervisory release will fully satisfy these purposes.  A greater sentence would be both unnecessary and overly punitive.

*First*, the seriousness of the offense, the respect for the law, and the need for a just punishment will all be satisfied by no more than a five-month sentence.  Indeed, five months of incarceration, on top of nearly six years since his arrest, are a steep price for Mr. Katakis to pay.

1200359

Even five months away from his young family will be extremely difficult for Mr. Katakis, as will the time away from his businesses.  Mr. Katakis takes very seriously the financial stability of his many longtime employees.  As this Court observed: "[S]omebody like Mr. Katakis has to agonize over the prospect of being sentenced for the crime that he's been found guilty of, and that the anticipation of that has to weigh heavily on him."[70]  There is no question that Mr. Katakis has already felt the acute pain and embarrassment of prosecution.  He stands before this Court and his community with the stain of a felony conviction.

*Second*, the interests of general deterrence will be served by no more than a five-month sentence.  Mr. Katakis's indictment, trial and the stain of conviction provide the greatest deterrent effect here.[71]  A long prison sentence is unlikely to deter criminal conduct any more than a lifelong criminal record will.[72]  The "felony conviction and the conditions of probation constitute[] sufficient specific deterrence" to prevent Mr. Katakis from reoffending.  *See United States v. Edwards*, 595 F.3d 1004, 1011 (9th Cir. 2010).

*Third*, the need to protect the public from further crimes by Mr. Katakis will be more than served by a five-month sentence. Mr. Katakis has no prior criminal record, presents no danger to the community, and has no likelihood of recidivism.  No further deterrence is required.

## IV.    CONCLUSION

For the foregoing reasons, Mr. Katakis respectfully requests that the Court impose a sentence of no more than a five months' incarceration, restitution of $505,014.59, a fine of $444,022.73, two years' supervisory release and special conditions as the Court may see fit to impose, including community service.  Such a sentence would be "sufficient, but not greater than

---

[70] Dkt. No. 580 (Status Conference Transcript) at 22:18-21.

[71] Ex. 42 (William Katakis).

[72] One district court noted, in sentencing a white-collar defendant, that "there is a considerable evidence that even relatively short sentences can have a strong deterrent effect on prospective 'white collar' offenders." *Adelson*, 441 F. Supp. 2d at 514.

1200359

necessary" given the facts of this case and Mr. Katakis's character.  18 U.S.C. § 3553(a).  It would appropriately reflect the seriousness of the offense, take into account Mr. Katakis's complete lack of criminal history and provide just punishment and deterrence.


Dated:  October 30, 2017                    KEKER, VAN NEST & PETERS LLP


                                      By:  /s/ Elliot R. Peters
                                           ELLIOT R. PETERS
                                           JENNIFER A. HUBER
                                           ELIZABETH K. MCCLOSKEY

                                           Attorneys for Defendant
                                           ANDREW B. KATAKIS

SENTENCING MEMORANDUM OF ANDREW KATAKIS
Case No. 2:11-CR-0511 (WBS)

1200359